

# In the Missouri Court of Appeals
## Western District

ROBERT GORDON, Guardian Ad Litem )
on Behalf of: )
 )
G.J.E., I.G.E., and S.J.E.; AMY E. )
SCHRAMM f/k/a AMY E. EPPERLY, ) WD78959 Consolidated with
Appellant, ) WD78964
v. )
 )
BRADLEY G. EPPERLY, ) FILED: September 27, 2016
Respondent. )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE KEVIN D. HARRELL, JUDGE

### BEFORE VICTOR C. HOWARD, PRESIDING JUDGE, LISA WHITE HARDWICK, AND EDWARD R. ARDINI, JR., JUDGES

Robert Gordon, guardian ad litem ("GAL"), and Amy E. Schramm ("Mother"), appeal the judgment modifying custody of Mother and Bradley G. Epperly's ("Father") three children. The GAL and Mother contend the court erred in denying their motions for change of judge; failing to make findings detailing the factors that resulted in the court's rejection of the GAL's proposed custodial arrangement; and granting Father joint legal and joint physical custody. For reasons explained herein, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**[1]

Mother and Father were married in 2001.  They had three children:  a daughter, born on February 13, 2003; a son, born on September 16, 2004; and a son, born on July 13, 2006.

Mother and Father's marriage was dissolved on August 31, 2006.  In the dissolution judgment, the court approved Mother and Father's agreed-upon parenting plan, which provided for Mother to have sole physical custody and the parties to share joint legal custody.  With regard to Father's visitation, the parenting plan stated that the children "shall reside with [Mother] and for the time being, given the tender years of the minor children, [Father] shall have weekly visits in Kansas City, Missouri under the supervision of [Mother] at a minimum of 1 day per week as agreed by the parties."  The court ordered Father to pay Mother $1000 per month in child support.

At the time of the dissolution, Father was working for the Army National Guard.  He served in Afghanistan from September 2009 to September 2010 and

---

[1] Father has filed a motion to strike the GAL and Mother's brief and to dismiss the appeal because their statement of facts violates Rule 84.04(c).  Rule 84.04(c) requires that an appellant's brief contain a "fair and concise statement of the facts relevant to the questions presented for determination without argument."  "'The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case.'"  *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 324 n.1 (Mo. App. 2014) (citation omitted).  We agree with Father that the GAL and Mother's statement of facts violates Rule 84.04(c) and falls short of fulfilling its purpose.  Their 30-page statement of facts consists almost entirely of Mother's self-serving testimony and evidence favorable to her, and it appears to be aimed solely at portraying Father in a negative light.  "Emphasizing facts favorable to the appellant and omitting others essential to the respondent does not substantially comply with Rule 84.04."  *Blanks*, 450 S.W.3d at 324 n.1.  Although failing to comply with briefing requirements is an appropriate ground for dismissing an appeal, we decline to do so because this case involves the best interests of minor children. *G.J.R.B. ex rel. R.J.K. v. J.K.B.*, 269 S.W.3d 546, 549 n.1 (Mo. App. 2008).

received several awards and commendations. From 2006 to 2011, when Father was not deployed overseas, Mother allowed Father to have some unsupervised visitation with the children in public places. Mother never allowed Father overnight visitation with the children, and she did not allow him visitation during major holidays except for a couple of Christmas Eves and a Memorial Day and/or Labor Day weekend. In late 2011 and 2012, paternal grandparents supervised Father's visits with the children at Mother's request.

Father has a history of problems with alcohol. He sought in-patient treatment for his drinking in 2005 and 2012. Father last drank to intoxication in April 2012 and has not consumed any alcohol since March 2014. He regularly attends Alcoholics Anonymous and receives counseling. There was no evidence that Father ever drank around the children, and he has never been cited for an alcohol-related offense.

In November 2012, Father filed a motion to modify the dissolution judgment to allow the parties to share joint physical custody of the children. After Father filed his motion to modify, Mother refused to allow paternal grandparents to supervise Father's visits and insisted that she supervise them.

In April 2013, the court appointed Dana Outlaw as guardian ad litem for the minor children. Also in April 2013, Father filed a motion to lift the restrictions on his parenting time or, in the alternative, to substitute his present wife, whom he married in March 2013, as supervisor. Following a hearing and apparently upon

3

the parties' agreement,[2] on July 19, 2013, the court ordered that Mother be removed as supervisor of Father's visitation and that Father be granted, at a minimum, weekly visitation with the children, to be supervised by paternal grandparents. Mother then filed a counter-motion to modify in which she asked the court to award her both sole physical and sole legal custody.

Mother subsequently stopped allowing paternal grandparents to supervise Father's visitation. She offered Father supervised visitation only through the Layne Project, the Guardian Program, or therapists, at Father's expense.[3] Also, Mother requested that Father sign a contract, which contained restrictions on his visitation, before she would allow him to have visitation. On April 2, 2014, Father filed a family access motion. This motion was given a separate case number from Father's motion to modify. Nevertheless, the court entered an order stating that Father's family access motion would be heard at the trial setting on the custody modification case.

Trial on Father's motion to modify, Mother's counter-motion to modify, and Father's family access motion was held on May 27-28, 2014.[4] Father, as movant, proceeded first and called two witnesses, while the guardian ad litem called two

---

[2] The court's order indicates that the parties reached an agreement with regard to Father's motion. The terms of the agreement are not part of the record.

[3] The court found that Mother stopped allowing paternal grandparents to supervise based upon the report of Dr. Aileen Utley, who performed a psychological evaluation of Father, and discussions with the children's therapist, Kevin Chafin. The court found that Mother's reliance on Utley's report and Chafin, who provided no documentation to support his testimony, was "unjustifiable." The court's findings indicate that it gave Utley's report and Chafin's testimony little weight.

[4] The court also took up two other motions that are not relevant to this appeal.

expert witnesses out of turn.  By the end of the day on May 28, 2014, Father had not yet rested, and Mother had not yet called any witnesses.  The case was continued to December 11, 2014, for further evidence.

On June 18, 2014, Father filed a second family access motion.  In this motion, he alleged that he had not been allowed visitation with his children since January 19, 2014.  He requested an immediate hearing on the motion.  The court set the hearing on the motion for August 20, 2014.  Before the hearing, Mother filed a motion to consolidate the family access case with the modification case.  Mother also filed a motion to appoint the guardian ad litem from the modification case to serve as guardian ad litem in the family access case, but the motion appears to have been erroneously filed in the original dissolution case.

On August 20, 2014, Mother and Father appeared for the hearing on the family access case.  Having not been made a party to the family access case, the guardian ad litem did not appear.  According to Mother, the court asked counsel for Mother and Father if they wished to speak in chambers.  Mother contends that her counsel told the court's clerk that she did not want to speak in chambers but wanted the proceedings to be on the record, while Father's counsel indicated that he wanted to speak in chambers.  According to Father, however, the in-chambers conference was "an accommodation to Mother's counsel."  The in-chambers conference lasted two hours.  The guardian ad litem was not present, and no record of the in-chambers conference was made.

Mother asserts that, in chambers, her counsel argued to the court that it could not proceed or take up any issues in the custody modification case without the guardian ad litem present. She also noted that only the family access case had been noticed for hearing. Additionally, she argued that the court's refusal to consolidate the custody modification case and the family access case subjected the parties to conflicting judgments. According to Mother, the court indicated to counsel that it was dismissing Father's second family access motion on the court's own motion and that the parties could either agree to supervised visitation through the Connections Supervised Visitation Program or Mother could supervise Father's visitation with the minor children as set forth in the original dissolution judgment. According to Father, Mother "refused all suggested solutions offered by [the court]."

After the in-chambers conference, the court went on the record and stated that it was dismissing Father's family access case, thereby rendering moot Mother's motion to appoint a guardian ad litem and her motion to consolidate the case with the custody modification case. The court also stated that it was setting aside its July 19, 2013 order in the custody modification case. The court explained that, in the stipulation that formed the basis for that order, the parties had agreed to Father's having weekly visits with the children, supervised by paternal grandparents. Because Father alleged that he had not seen the children in seven months, the court decided to set aside that order and order the parties to

6

follow the original dissolution judgment, whereby Mother would supervise Father's visitation. The court entered a written order to this effect on September 9, 2014.

Meanwhile, Father filed a motion to remove Outlaw as guardian ad litem. In this motion, Father alleged that Outlaw, along with Mother's counsel, had instructed Mother to disregard the court's order to allow Father visitation with the children in accordance with the dissolution judgment. Mother filed a motion for a mistrial in the custody modification case or, in the alternative, to set aside the court's September 9, 2014 order because the court had no authority to enter the order, and the order put Mother and the children at risk of danger. The court held a hearing on the motions, took them under advisement, and set the case for a review hearing in two weeks "to make sure that the parties were complying" with the order to follow the dissolution judgment.

On October 24, 2014, the court held its review hearing. The court heard arguments from counsel but did not take evidence. Father's counsel noted that Mother had not allowed Father to see the children for over nine months, while Mother's counsel argued that Mother had offered Father visitation supervised by third parties, but Father had not accepted. Father's counsel argued that Mother offered Father only visitation supervised by persons that he would have to pay to be the supervisor.

After hearing counsel's arguments, the court stated that there was nothing ambiguous about the provision in the parties' dissolution judgment requiring that Mother allow Father one day of visitation each week, supervised by her. The court

7

further stated that the parties were not following that judgment. The court issued a show cause order to Mother directing her to return in one week to show cause why she failed to comply with the dissolution judgment.

On October 26, 2014, Mother, Father, and the children met for a supervised visit along with a mediator. This was the first time that Father had seen the children since January 19, 2014. After the visit, Mother requested a continuance of the show cause hearing, but the court denied her request.

The court held the show cause hearing on October 31, 2014. According to Mother, she brought two witnesses, including a paid expert, to testify on her behalf, but the court refused to allow the testimony. Mother asserts that she was allowed to testify for approximately ten minutes, but the court allowed Father's counsel to repeatedly interrupt her. The record on appeal does not include a transcript of the hearing. It does not appear that a contempt order was entered.

On November 4, 2014, the court disqualified Outlaw as guardian ad litem and appointed Robert Gordon in her place. The court also ordered a mistrial in the modification case due to Gordon's appointment, and the court set a new trial for April 27 through May 1, 2015. Two weeks after he was appointed, the GAL filed a motion for an automatic change of judge under Rule 51.05. The court denied his motion. In the meantime, Father filed an amended motion to modify custody in which he requested sole legal and sole physical custody.

The court held a pretrial conference on December 10, 2014. According to Mother, the court told the parties that the April 27 through May 1, 2015 trial

8

setting was a firm setting and would not be changed. On December 22, 2014, however, the court, on its own motion, reset the trial for April 13 through April 17, 2015. After Mother requested to continue this due to her counsel's unavailability, the court told the parties that it would do so only if all the parties agreed. Ultimately, after the parties agreed, the court continued the trial to April 20 through 24, 2015. When Father later requested that the court continue a pretrial conference set for April 1, 2015, the court granted his request.

Mother then filed a motion for change of judge for cause. In this motion, she argued that, because the presiding judge of the 16th Judicial Circuit had reassigned the trial judge to non-domestic cases, effective January 1, 2015, the trial judge lacked the authority to hear the case. Mother contended that this case was the only domestic case that the trial judge had retained after the presiding judge's administrative order. The court denied the motion. Mother filed an amended motion for change of judge for cause due to the court's alleged prejudice and bias and attitude of personal enmity toward her and in favor of Father. The court denied the motion.

Trial was held on April 20 through 24, 2015. Following the trial, the court entered its judgment modifying the parties' dissolution judgment to award Father and Mother joint legal and joint physical custody. The court adopted and modified Father's proposed parenting plan. Pursuant to the court's modified plan, the children were to continue to reside with Mother, with Father having parenting time every other weekend, every Wednesday evening, alternating holidays, and half of

9

the summer. The court also awarded Father compensatory time to make up for the nine months in 2014 that Mother did not allow Father visitation. The court ordered Father not to consume alcohol at any time prior to or during any period of parenting time and to install an ignition lock on his vehicle for six months after entry of the modification judgment, regularly attend Alcoholics Anonymous at least four times a month, obtain a sponsor at Alcoholics Anonymous, and continue individual counseling for 12 months. Mother and the GAL appeal. Additional facts will be set forth as necessary to address the points on appeal.

## STANDARD OF REVIEW

Appellate review of a judgment modifying a dissolution decree is under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 397 (Mo. banc 2001). We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. We view the evidence and any reasonable inferences therefrom in the light most favorable to the court's decision and disregard all contrary evidence and inferences. *Pratt v. Ferber*, 335 S.W.3d 90, 93 (Mo. App. 2011). In doing so, we recognize that "'[j]udging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witness.'" *Wennihan v. Wennihan*, 452 S.W.3d 723, 727 (Mo. App. 2015) (citation omitted).

## ANALYSIS

10

***Point I -- GAL's Motion for Change of Judge Without Cause***

In Point I, the GAL contends the circuit court erred in denying his motion for change of judge without cause. He argues that the court had no authority to deny the motion because he filed it within 30 days of his appointment as guardian ad litem, and he had not filed any prior motion for change of judge.

We review this issue of law *de novo*. *In re S.M.H.*, 160 S.W.3d 355, 359 (Mo. banc 2005). "Rule 51.05 grants a party the absolute right to disqualify a judge once without cause or any showing of prejudice." *State ex rel. Manion v. Elliott*, 305 S.W.3d 462, 464 (Mo. banc 2010). Rule 51.05(d) provides that an application for change of judge "may be made by one or more parties in any of the following classes: (1) plaintiffs; (2) defendants; (3) third-party plaintiffs (where a separate trial has been ordered); (4) third-party defendants; or (5) intervenors."

During oral argument, the GAL argued, without citing any authority, that he should be deemed to be a third-party plaintiff for purposes of construing Rule 51.05(d). In his motion for change of judge, however, the GAL contended that he should be deemed to be a "third-party respondent," a claim which he does not assert on appeal. "'Parties are bound by the position they took in the trial court and will not be heard on a different theory on appeal.'" *Rapp v. Eagle Plumbing, Inc.*, 440 S.W.3d 519, 523 (Mo. App. 2014) (citation omitted).

Gratuitously, we note that a guardian ad litem does not fit the description of a third-party plaintiff as a "defending party" under Rule 52.11, which governs third-party practice. Furthermore, the plain language of Rule 51.05(d) allows for the

11

filing of a change of judge motion by "third-party plaintiffs (*where a separate trial has been ordered*)," (emphasis added), which is clearly not the case here.[5]

A guardian ad litem is simply not listed among the classes of parties that may file a motion for change of judge under Rule 51.05(d). To find that Rule 51.05(d) includes a guardian ad litem, when the rule's plain language indicates that it does not, would require adding language to the rule that is not there. As with statutes, we do not add language to Supreme Court rules where it does not exist. *See Frye v. Levy*, 440 S.W.3d 405, 424 (Mo. banc 2014). We must interpret the language of rule as the Supreme Court has written it. *See id*.[6]

Additionally, even if we could somehow construe Rule 51.05 as allowing a guardian ad litem to file an application for change of judge, the GAL's motion is untimely. Pursuant to Rule 51.05(b), a party must file an application for change of judge within 60 days from service of process or 30 days from the designation of

---

[5] Alternatively, the GAL asserts in his brief that a guardian ad litem should be deemed to be an intervenor for purposes of Rule 51.05(d). In his motion for change of judge, the GAL specifically stated that "the Guardian ad Litem is not an intervening party in this matter." Again, the GAL is bound by the position he took in the trial court and cannot assert a different theory on appeal. *Rapp*, 440 S.W.3d at 523. Gratuitously, we note that a guardian ad litem does not fall under Rule 52.12's description of an intervenor. Moreover, the GAL did not file his motion for change of judge within 180 days of the designation of the trial judge, which is the maximum time limit for intervenors to file such a motion. Rule 51.05(b).

[6] The GAL notes that Section 452.785.4, RSMo Cum. Supp. 2013, states that "[t]he guardian ad litem may, for the purpose of determining custody of the child only, participate in the proceeding as if such guardian ad litem were a party." The GAL contends that this language means that he, like Mother and Father, has the right to seek an automatic change of judge. It is undisputed that a guardian ad litem participates like a party in the custody proceeding and has the powers set forth in Section 452.423.3, RSMo Cum. Supp. 2013, which include acting as the child's legal representative at the hearing, cross-examining and subpoenaing witnesses, and conducting interviews prior to the hearing. Nonetheless, a guardian ad litem simply does not fall within any of Rule 51.05(d)'s list of the classes of parties that may file an application for an automatic change of judge.

the trial judge, whichever time is longer. The trial judge in this case was designated on November 16, 2012. The court entered an order appointing Outlaw to be guardian ad litem on April 12, 2013. After the court disqualified Outlaw as the guardian ad litem, the GAL was appointed in her place on November 4, 2014. He then filed his motion for change of judge on November 18, 2014, over two years after the trial judge was designated and over eighteen months after the court appointed a guardian ad litem in the case. Although the GAL contends that his motion was timely because it was filed within 60 days from the date he received notice of the order appointing him, he offers no authority to support his claim that the clock reset when he was appointed to replace the original guardian ad litem. The circuit court did not err in denying the GAL's motion for change of judge under Rule 51.05. Point I is denied.

***Point II -- Mother's Motion for Change of Judge for Cause***

In Point II, Mother contends the circuit court erred in denying her motion for change of judge for cause because the court had no authority to hear domestic cases. Specifically, she argues that, while this case was pending, the presiding judge of the Circuit Court of Jackson County reassigned the trial judge from the family court to criminal and non-domestic cases. Mother asserts that, after this reassignment became effective on January 1, 2015, the trial judge lost his authority to hear all domestic cases, including this one.

13

Section 487.010[7] provides that the Circuit Court of Jackson County is one of the judicial circuits that shall have a family court division. § 487.010.1(3). The judicial circuit's presiding judge has the authority to designate the family court division as well as to assign judges to divisions and assign judges to hear cases or classes of cases §§ 487.010.3 and 478.240.2. Section 487.080(1) gives the family court "exclusive original jurisdiction to hear and determine . . . [a]ll actions or proceedings governed by chapter 452 including . . . child custody and modification actions."

It is undisputed that, when this case was assigned to the trial judge in November 2012, the trial judge had been designated as a family court division and, therefore, had the authority to hear and determine Father's motion to modify custody pursuant to these statutory provisions. Mother contends that, when the presiding judge later reassigned the trial judge to non-domestic cases, the trial judge had no authority to hear the case. To support this argument, she relies on *State ex rel. Delgado v. Merrell*, 86 S.W.3d 468, 472 n.5 (Mo. App. 2002). The footnote Mother cites in *Delgado* does not stand for this proposition, however. Instead, the footnote merely notes that, because the associate circuit judge had been assigned to hear classes of civil cases not exceeding $25,000, the associate circuit judge would not *automatically* have been assigned to hear the case at issue, as its amount in controversy exceeded $25,000. *Id*. The court did not state that

---

[7] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

the associate circuit judge had no authority to hear the case or that it was improper for the presiding judge to have assigned the case to the associate circuit judge due to the fact that it was not within the classes of cases to which the associate circuit judge had been assigned.

Mother argues that an order from the presiding judge was required for the trial judge to retain this domestic case after January 1, 2015. We disagree. The 16th Judicial Circuit's local rule 6.2.4.5 specifically provides that "[a]fter a civil *or domestic case* has been assigned in accordance with the foregoing provisions of this rule, *it shall remain on that division until tried or otherwise disposed of, unless it is transferred to another division or docket in accordance with these Rules*." (Emphasis added.)

This domestic relations case was properly assigned to this trial judge; therefore, it remained in this trial judge's division until it was tried or otherwise disposed of or transferred to another division. No separate or special order from the presiding judge was necessary. Because the trial judge had the authority to hear this case, he did not err in denying Mother's motion for change of judge on this basis. Point II is denied.

### Point III -- Mother's Amended Motion for Change of Judge for Cause

In Point III, Mother contends the circuit court erred in summarily overruling her amended motion for change of judge for cause. She argues that her amended motion was sufficient to warrant the judge's disqualification for cause or, at the very least, a hearing on the motion before a different judge.

15

In reviewing the circuit court's denial of a motion for change of judge, we presume "that a trial judge will not preside over a proceeding in which the judge cannot be impartial." *Elnicki v. Caracci*, 255 S.W.3d 44, 48 (Mo. App. 2008). Therefore, our review is limited to determining whether the circuit court's ruling constituted an abuse of discretion. *Id*.

Section 508.090.1 provides that a judge may be disqualified in a civil case if "(1) . . . the judge is interested or prejudiced, or is related to either party, or has been of counsel in the cause;" (2) . . . the opposite party has an undue influence over the mind of the judge." A request to disqualify a judge must include an affidavit attesting "to the truth of the petition, and that affiant had just cause to believe that he cannot have a fair trial on account of the cause alleged." § 508.130. If reasonable notice has been given to the non-moving party, the judge "shall consider the application, and if it is sufficient, the judge shall be disqualified." § 508.140.1. A "sufficient" motion for change of judge is one that is both procedurally adequate, in that it meets Section 508.130's requirements of form and Section 508.140's requirements of notice, and substantively adequate, in that it alleges, on its face, facts that warrant disqualification for cause under either subsection (1) or (2) of Section 508.090.1. *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 696-97 (Mo. App. 1990). If the motion is sufficient procedurally and substantively, then the judge shall be disqualified pursuant to Section 508.140.1, unless the facts alleged in the application are disputed. *Id*. at 697. When the facts

16

in the motion are disputed, then the court must hold a hearing on the record. *Id*.

"[I]f the challenged judge is to testify, a different judge must hear the matter." *Id*.

In this case, Mother's amended motion was procedurally adequate, as it was verified and gave reasonable notice to Father. *See id*. at 696-97. As for whether it was substantively adequate, the basis for Mother's amended motion was the circuit court's alleged demonstration of "systematic and continuing prejudice and bias towards [her]" and an "attitude of personal enmity towards [her] and in favor of [Father] to [Mother]'s detriment."

Not every prejudice "is legally sufficient to disqualify a judge from the duty of hearing a case." *Id*. at 697. Legally sufficient prejudice has been described as follows:

> Prejudice is the attitude of personal enmity towards the *party* or in favor of the adverse party to the other's detriment. It is not the mere possession of views regarding the law or the conduct of a party or of his counsel. Prejudice is in the personal sense rather than in the judicial sense. Prejudice refers to a mental attitude or a disposition of the judge towards a party: either a hostile feeling or spirit of ill-will against one of the litigants, or a favoritism towards one of them.

*Id*. Additionally, to be disqualifying, bias and prejudice "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id*. "An impersonal prejudice resulting from background experience is insufficient." *Id*. (footnote omitted). Moreover, "[t]he mere fact that a ruling is made against a party . . . does not show bias or prejudice on the part of the judge." *Farris v. Farris*, 75 S.W.3d 345, 348 (Mo. App. 2002). Rather, "[a] judge should withdraw from a case only

17

when the facts show prejudice to such an extent so as to evince a fixed prejudgment and to preclude a fair weighing of the evidence." *Wesolich*, 794 S.W.3d at 698.

First, Mother argued that the judge's actions on August 20, 2014, were prejudicial, improper, and indicated he had prejudged the case because he held an "extended" in-chambers conference on that date concerning both Father's family access motion and his motion to modify, without providing notice to the guardian ad litem or to the parties that he was going to take up the modification case. Mother alleged that the judge, without hearing evidence, then decided that Father had been denied visitation and should have contact with the children, so he vacated the July 2013 visitation and custody order in the modification case.

Second, Mother argued that the trial judge demonstrated prejudice, bias, and hostility by accusing her of not complying with the dissolution judgment and *sua sponte* issuing a show cause order against her on October 24, 2014, without having heard any sworn testimony or evidence. Mother also argued that the trial judge allowed Father's counsel to interrupt the court several times during the hearing but then reprimanded Mother's counsel for her tone. Mother contended that the trial judge further exhibited hostility toward her when he would not grant her previously-engaged counsel a continuance for the show cause hearing; would not allow her to present the testimony of her two witnesses, including a paid expert; limited her evidence -- but not Father's evidence -- to ten minutes; and allowed Father's counsel to interrupt her presentation of evidence.

18

Third, Mother argued that the trial judge demonstrated prejudice, bias, and hostility by *sua sponte* continuing a hearing for Father while denying her requests for a continuance, and by refusing to set any of Mother's motions for hearing or summarily denying them while immediately setting Father's motions for hearing.

Lastly, Mother argued that the trial judge demonstrated prejudice, bias, and hostility by transferring every other domestic case except this one to another division after he was reassigned to non-domestic cases on January 1, 2015.

None of these allegations were substantively adequate to require a hearing, let alone disqualification. Almost all of Mother's allegations were based on adverse rulings, which were not sufficient to show bias. Her allegations about the court's transferring every other case but hers were also insufficient, as the case remained on the trial judge's docket, and he was well within his authority to keep it. *See* Point II, *supra*. None of the court's statements or actions demonstrated bias or prejudice stemming from a source outside of what the judge learned from his participation in the case. Likewise, they did not demonstrate an attitude of personal enmity toward Mother or in favor of Father to Mother's detriment. The court did not abuse its discretion in denying Mother's amended motion for change of judge for cause. Point III is denied.

**Point IV -- *Findings Regarding Rejection of GAL's Proposed Custodial Arrangemen*t**

In Point IV, Mother and the GAL contend that the circuit court erred in failing to make findings detailing the specific relevant factors that resulted in its rejection of the GAL's proposed custodial arrangement. They argue that the circuit court

19

was statutorily required to make such findings and its failure to do so requires reversal.

Section 452.375.6 provides that, when the parties have not agreed to a custodial arrangement, the court shall make written findings in the judgment based on the public policy in Section 452.375.4[8] and on each of the specific relevant factors from Section 452.375.2[9] that make a particular arrangement in the child's

---

[8] Section 452.375.4 states Missouri's public policy concerning custody decisions:

> The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child, except for cases where the court specifically finds that such contact is not in the best interest of the child, and that it is the public policy of this state to encourage parents to participate in decisions affecting the health, education and welfare of their children, and to resolve disputes involving their children amicably through alternative dispute resolution. In order to effectuate these policies, the court shall determine the custody arrangement which will best assure both parents participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child.

[9] The factors listed in Section 452.375.2 are, in pertinent part:

> (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;
>
> (2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;
>
> (3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;
>
> (4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;
>
> (5) The child's adjustment to the child's home, school, and community;
>
> (6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. . . . ;
>
> (7) The intention of either parent to relocate the principal residence of the child; and
>
> (8) The wishes of a child as to the child's custodian. . . .

best interests. Additionally, if the court rejects a proposed custodial arrangement, the court must include a written finding in the judgment detailing the specific relevant factors from Section 452.375.2 that resulted in the rejection. § 452.375.6. "[S]ection 452.375.6 puts the burden on the court to issue written findings instead of on the parties" to request such findings pursuant to Rule 73.01(c). *Buchanan v. Buchanan*, 167 S.W.3d 698, 701 n.3 (Mo. banc 2005).

If the court does not include the required findings, the judgment must be reversed and the cause remanded so that the court can make the findings. *Speer v. Colon*, 155 S.W.3d 60, 62 (Mo. banc 2005). This is because the purpose of requiring findings on the relevant factors from Section 452.375.2 that led to the rejection of a custodial arrangement "is to allow for more meaningful appellate review." *Huber ex rel. Boothe v. Huber*, 174 S.W.3d 712, 716 (Mo. App. 2005).

In this case, the parties did not agree to a custodial arrangement. Father, Mother, and the GAL submitted separate parenting plans. Father's proposed parenting plan provided that Mother and Father would share joint legal and joint physical custody of the children, while Mother's proposed parenting plan and the GAL's proposed parenting plan provided for Mother to have sole legal and sole physical custody. The court found that Father's proposed plan, as modified by the court, served the children's best interests. The court's plan gave the parties joint legal and joint physical custody and provided that Father would have parenting time

with the children every Wednesday evening, every other weekend, alternating holidays and spring breaks, and half of each summer.[10]

In its judgment, the court made detailed findings on each of the relevant factors in Section 452.375.2 that made this custodial arrangement in the children's best interests. The court also made detailed findings on each of the relevant factors that resulted in its rejecting Mother's proposed custodial arrangement. In these findings, however, the court did not expressly state that it was rejecting the GAL's proposed custodial arrangement as well. The GAL and Mother assert that the court's failure to separately make findings on the GAL's proposed custodial arrangement requires reversal. We disagree.

Mother's proposed custodial arrangement and the GAL's proposed custodial arrangement were virtually identical. Both proposed arrangements provided that Mother have sole legal and sole physical custody; that Mother's address be used for mailing and educational purposes; that Father be allowed only six hours of supervised visitation on one day per week; that Father's visits be supervised by Swan Therapeutic Services; that Father pay for Swan Therapeutic Services; and that Father's contact with the children by telephone or internet be supervised.

---

[10] The court also awarded Father some specific compensatory periods of parenting time due to Mother's denial of his parenting time during nine months in 2014. The award of compensatory parenting time is not at issue in this appeal.

22

Because the proposed custodial arrangements of both Mother and the GAL were the same in all material respects,[11] the circuit court's findings detailing why it rejected Mother's proposed custodial arrangement applied equally to the GAL's proposed custodial arrangement. These findings were sufficient to allow for meaningful appellate review. The court's failure to specifically refer to "the GAL's parenting plan," when it clearly addressed the GAL's proposed custodial arrangement by addressing Mother's virtually identical proposed custodial arrangement, was, at most, harmless error. Point IV is denied.

***Point V -- Whether Modification Was Against the Weight of Evidence***

In Point V, Mother and the GAL contend that the circuit court erred in ordering anything other than sole legal and physical custody to Mother because the court's finding that joint legal and joint physical custody was in the children's best interests was against the weight of the evidence. Specifically, Mother and the GAL argue that the court: (1) erroneously excluded the expert testimony of a social worker who had supervised some of Father's visits with the children; (2) erroneously found that there was no evidence of the children's wishes; (3) improperly ignored the overwhelming psychological evidence; and (3) disregarded

---

[11] There were three differences between Mother's proposed custodial arrangement and the GAL's proposed custodial arrangement. First, Mother proposed that Father's one day of visitation occur on Sunday, while the GAL did not specify a day. This was clearly immaterial. Second, Mother proposed that Father receive no holiday visitation unless the holiday happened to occur on his visitation day and a supervisor was available, while the GAL proposed alternating holidays. Third, Mother proposed that "no third party" be involved in Father's visits, while the GAL proposed that any of Father's friends or relatives could be present during his visits. Given that the court's parenting plan awarded alternating holidays and placed no restrictions on persons present during Father's parenting time, the court did not "reject" these parts of the GAL's proposed custodial arrangement; therefore, no findings were required.

23

the overwhelming evidence of Father's poor history and conduct toward the children.  Mother and the GAL further assert that the weight of the evidence did not support a finding that the parties had a commonality of beliefs concerning parental decisions or that there had been a substantial change of circumstances making Father's joint custody in the children's best interests.

The appellant faces a "heavy burden" to overturn the circuit court's child custody award.  *Keel v. Keel*, 439 S.W.3d 866, 875 (Mo. App. 2014).  We presume that the court considered all of the evidence and made its award in the children's best interests.  *Lindsey v. Lindsey*, 336 S.W.3d 487, 494 (Mo. App. 2011).  We will not disturb the award unless we are firmly convinced that the children's welfare requires some other result.  *Id*.

In determining that joint legal and joint physical custody was in the children's best interests in this case, the court examined and made very detailed findings on all of the relevant factors listed in Section 452.375.2.  Specifically, the court found that factor (1), the wishes of the child's parents as to custody and the proposed parenting plans; factor (2), the children's need for a frequent, continuing, and meaningful relationship with both parents and the parents' ability and willingness to actively perform their functions as mother and father for the children's needs; factor (3), the children's interaction and interrelationship with parents, siblings, and any other person who may significantly affect their best interests; and factor (4), which parent is more likely to allow the children frequent, continuing, and meaningful contact with the other parent, favored Father.  The court found that

24

factor (5), the children's adjustment to their home, school, and community, favored

Mother, while factor (6), the mental and physical health of all individuals involved,

was neutral.  Lastly, the court found factor (7), the intention to relocate, was

irrelevant, and that there was no evidence as to factor (8), the wishes of the

children as to their custodian.

Mother and the GAL contend in their first subpoint that the court erred in

excluding and, consequently, not considering, the expert testimony of Kristin

Swan, a licensed clinical social worker whom Mother hired to assist her in

supervising Father's visits with the children in 2015.  Because the GAL failed to

disclose that Swan would be testifying as an expert, the court allowed Swan to

testify only as a fact witness about what she observed during Father's visits.

Mother and the GAL argue that Swan should have been allowed to testify as an

expert that, based upon her experience, education, and training, as well as her

observations, she did not believe that Father could manage the children on his own,

ensure their safety, or be unsupervised around them.

The circuit court has discretion to admit or exclude expert testimony.  *Legg

v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 386 (Mo. App.

1999).  We need not determine whether the court abused its discretion in

excluding Swan's expert testimony, however, because the exclusion of her

testimony was, at most, harmless error.

The exclusion of expert testimony "does not result in reversible error unless

it would have changed the outcome" of the case.  *Id*.  Swan's expert testimony

would not have changed the outcome here because the court did not find Swan to be a credible witness. In the judgment, the court discussed Swan's and another witness's testimony concerning examples of Father's alleged inability to appropriately supervise the children. The court then stated that it gave "little to no weight to these examples" and found the testimony to be "meritless and paltry." The court described Swan's other testimony, in which she implied that Father had acted inappropriately toward his daughter, to be "bogus, outrageous, abominable and mean-spirited." Given that the court found that Swan's observations were not credible, it is highly unlikely that it would have found her expert opinion, which was based upon those observations, to be credible. Therefore, the exclusion of her expert opinion was harmless error.

In their second subpoint, Mother and the GAL contend that the court erred in finding that no evidence was presented as to the children's wishes. They note that Chafin, the children's therapist, testified that the children did not want to relocate to Father's home or live with Father and that they desired to remain in Mother's custody. The court specifically stated in its judgment that it accorded Chafin's testimony "little weight" because he admitted to shredding any documents pertaining to the children's progress or treatment. We defer to the circuit court's decision to reject Chafin's testimony. *Wennihan,* 452 S.W.3d at 727.

In their third subpoint, Mother and the GAL contend the court erred in finding Father's treating psychologist, Dr. Stephen Blum, to be more credible regarding Father's psychological issues than Dr. Aileen Utley, who conducted forensic

26

psychological examinations on both parties; Dr. Stanley Bier, a psychologist who evaluated Father; Chafin, the children's therapist; and Swan. In its judgment, the court noted the conflicting evidence from the experts on Father's psychological issues. The court then explained why, after consideration of all of the evidence in the record, it agreed with Blum's unequivocal opinion that Father was not a danger to the children. We defer to the circuit court's determination as to the credibility of witnesses and the weight to accord the evidence. *Id.*

In their fourth subpoint, Mother and the GAL contend the court "failed to consider or make findings on a great deal of relevant evidence showing that only sole legal and physical custody with Mother was in the children's best interest." Much of the evidence that Mother lists was disputed. Clearly, the court either rejected Mother's evidence or accorded it little weight. We defer to its decision to do so. *Id.*

In their fifth and final subpoint, Mother and the GAL contend there was no substantial evidence justifying anything other than an award of sole legal and sole physical custody of the children to Mother. Specifically, they argue that there was no evidence that the parties shared a commonality of beliefs supporting an award of joint legal custody. On this issue, the court found that Mother had not previously conferred with Father regarding major decisions regarding the children. The court also stated, however, that it was "cautiously optimistic" that Mother would comply with the court's parenting plan. The court noted that Mother admitted that she and Father have had no verbal or physical confrontations in the

27

eight years since their dissolution. Additionally, Father testified that he was willing and able to work with Mother in a joint custody arrangement. Mother's opposition to joint legal custody was not a sufficient reason to deny Father joint legal custody. § 452.375.5(1). *Compare Frantz v. Frantz*, 488 S.W.3d 167, 177-78 (Mo. App. 2016) (affirming joint legal custody award where only one party was willing and able to make shared decisions affecting the child's welfare and the other party refused to cooperate), *with Reno v. Gonzales*, 489 S.W.3d 900, 903 (Mo. App. 2016) (reversing joint legal custody award where there was no evidence of the parties' past or present ability to make joint decisions in child's best interests).

Mother and the GAL also argue that there was no evidence of a substantial change in circumstances permitting modification. Although the court did not expressly state what the substantial change in circumstances was, the judgment indicates that it was Mother's unwillingness and inability to allow the children frequent, continuing, and meaningful contact with Father. Sufficient evidence in the record supported this finding. A parent's interference with the other parent's rights to visitation constitutes a changed circumstance that may justify and require custody modification. *Frantz*, 488 S.W.3d at 175. Point V is denied.

### CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

28