**Adam R. MARTIN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**WD 79460**

Missouri Court of Appeals,
Western District.

OPINION FILED: May 9, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2017

---

Jonathan Sternberg, Kansas City, MO, for appellant.

Robert J. Bartholomew, Jr., Jefferson City, MO, for respondent.

Before Division Two: Cynthia L. Martin, Presiding Judge, Lisa White Hardwick, Judge and Alok Ahuja, Judge

**Cynthia L. Martin, Judge**

Adam R. Martin ("Martin") appeals from a judgment denying his Rule 29.15 motion after an evidentiary hearing. Martin alleges that it was error to deny his motion because he was sentenced in retaliation for the exercise of his right to testify and to deny his guilt, and because he received ineffective assistance of counsel when trial counsel failed to object to a "hammer" instruction, and failed to adequately investigate and call witnesses to present content found on a social media site. Martin also alleges that the motion court erred by denying two motions seeking a change of judge for cause. Finding no error, we affirm.

### Factual and Procedural History

Martin was convicted following a jury trial of sexual assault. He was determined to be a prior and persistent offender, and was sentenced to fifteen years' imprisonment. On direct appeal, this Court affirmed Martin's conviction and sentence. *State v. Martin*, 425 S.W.3d 147 (Mo. App. W.D. 2014).

#### *The circumstances giving rise to Martin's conviction*

On June 28, 2010, seventeen year old T.H. went to Odessa, Missouri to spend time with a girlfriend, A.G. The girls decided to hang out with Martin (who was twenty-four) and Richard Fox. Martin purchased a case of beer. The group went to the Odessa reservoir and drank.

Later, the group went to Martin's house for a bonfire. T.H. had another beer and became "tipsy." Martin made margaritas for the girls. T.H. drank her margarita, then got up to go to the bathroom. She felt "really, really, wobbly." Martin helped

T.H. into the house and upstairs to a bathroom. After using the bathroom, T.H. told Martin she felt dizzy. Martin invited her downstairs to sit on the couch.

Martin began to kiss T.H. and then took her hand and forced her to touch his penis through his clothing. T.H. tried to pull away, but Martin held on to her. Martin continued to kiss T.H., and then grabbed her and pulled her on top of him. T.H. felt dizzy, exhausted, and "just wanted to sleep." T.H. found herself lying on her back with Martin on top of her. Martin removed T.H.'s jean shorts and pulled her legs up "really high." T.H. felt a "sharp shooting pain in her vagina." T.H. told Martin to stop. Martin replied "Why?" and did not stop. T.H. unsuccessfully tried to push Martin off of her, then blacked out.

When T.H. awoke, she was crying and could hear A.G. calling her name. A.G. helped T.H. to the bathroom. The girls saw blood on T.H.'s underwear. T.H. noticed her bra was undone in the back.

A.G. asked Martin what had happened, and he said he did not know. Martin told the girls it was time for them to go home. Martin drove the girls back into town, and dropped them off a block from A.G.'s house. A.G.'s mother and the girls contacted the Odessa police.

Detective Nathan Tretter ("Det. Tretter") with the Lafayette County Sheriff's Department was contacted by the Odessa police department early on June 29, 2010. After being briefed about T.H.'s reported rape, he left for Centerpoint Hospital where T.H. had gone for an examination.

Nurse Carolyn Cordle ("Cordle") conducted a forensic examination. During the exam, T.H. was very upset. Cordle noted a laceration injury and redness to T.H.'s cervix. There was also a laceration on her labia along with redness and tenderness. These injuries were consistent with penile penetration from nonconsensual sex. In addition, Cordle noted a white discharge in T.H.'s vaginal opening consistent with the ejaculation of semen. Subsequent DNA testing confirmed that the substance contained Martin's DNA.

After the examination, Det. Tretter spoke with Cordle, and then proceeded to Martin's residence to collect evidence. Martin had already been arrested. On June 30, 2010, Det. Tretter interviewed Martin. Martin denied providing alcohol to the girls, and denied seeing them consume alcohol. Martin told Det. Tretter that he never touched T.H.'s bare vagina, and denied putting his penis in her vagina, even after being told that testing could result in his DNA being found in T.H.'s vagina.

At trial, Martin testified in his own defense. Martin testified that he and T.H. had been involved in a consensual encounter, and were fully clothed while "grinding" their pelvic areas together on the couch. Martin claimed he ejaculated with his penis inside his boxers and shorts. Martin claimed T.H. continued to "grind" on him after he ejaculated.

The jury found Martin guilty of sexual assault.

### Martin's sentencing

At sentencing, the State requested imposition of the maximum sentence of fifteen years' imprisonment based on the Sentencing Assessment Report, Martin's prior convictions,[1] and the fact that Martin was on parole when he sexually assaulted T.H. Martin's counsel argued for a five-year sentence.

In sentencing Martin, the trial court noted "a very wide variety of stories" present-

---

1. Martin's prior convictions included two felonies: burglary in the second degree in 2005, and assault on a law enforcement officer in 2008.

ed at both the trial and at sentencing. The court characterized Martin's testimony suggesting the semen in T.H.'s vagina was the result of "grinding" while Martin was fully clothed as "just ridiculous. It's inconceivable." The trial court stated to Martin: "You lied to me in court. Okay. No doubt in my mind, you lied to me in court." The trial court further noted that the Sentencing Assessment Report contained information that Martin was distributing drugs in jail. The trial court concluded that "any chance of leniency went out the window when you lied to me and when you did what you did after court."

In imposing sentence, the trial court announced that it was taking into consideration the evidence presented, arguments of counsel, the evidence contained in the Sentencing Assessment Report, and Martin's "testimony and dishonesty to the court." The trial court, having previously found Martin to be a prior and persistent offender, imposed the maximum sentence of fifteen years' imprisonment.

### Martin's post-conviction proceedings

In July 2014, Martin timely filed a Rule 29.15 motion for post-conviction relief ("Rule 29.15 Motion") with the assistance of counsel. Relevant to this appeal, the Rule 29.15 Motion urged three claims:[2] (i) that the trial court abused its discretion because it unlawfully based its decision to impose the maximum sentence of fifteen years on Martin's exercise of his right to testify and deny guilt; (ii) that Martin received ineffective assistance of counsel when trial counsel failed to object to the giving of a "hammer" instruction after only two hours and 27 minutes of jury deliberation; and (iii) that Martin received ineffec-

tive assistance of counsel when trial counsel failed to adequately investigate and call witnesses who would have presented evidence attacking T.H.'s credibility.

On September 11, 2014, Martin filed a motion for change of judge for cause ("Change of Judge Motion") which claimed that the motion court was a material witness to Martin's claim of retaliatory sentencing. The Change of Judge Motion was overruled, and an evidentiary hearing was scheduled for the Rule 29.15 Motion on August 21, 2015.

At the conclusion of the evidentiary hearing, Judge Rolf took the Rule 29.15 Motion under advisement, and directed the parties to submit proposed judgments "within thirty (30) days." An August 21, 2015 docket entry indicated that the Rule 29.15 Motion was scheduled for case review at 3:00 p.m. on September 21, 2015.

On September 21, 2015, a docket entry reflected Judge Rolf's denial of the Rule 29.15 Motion. Martin's counsel received notice of this docket entry by e-mail on September 28, 2015. The e-mail notification indicated that case review was conducted at 12:20 p.m. on September 21, 2015; that the State was present and Martin's counsel was not; and that no findings of fact or conclusions of law had been filed by Martin. The e-mail notification also indicated that the Rule 29.15 Motion was denied at 1:46 p.m. by a docket entry that directed the State to prepare a judgment. Martin did not file his proposed findings of fact and conclusions of law until around 4:00 p.m. on September 21, 2015, thirty-one days after the August 31, 2015 hearing.[3]

---

2. The Rule 29.15 Motion asserted a fourth claim that trial counsel was ineffective for failing to adequately investigate T.H.'s prior false sexual allegation against her first cousin. That denied claim has not been raised on appeal and is abandoned.

3. Martin complains that although the parties were told to file proposed findings and conclusions within thirty days of the August 21, 2015 hearing on the Rule 29.15 Motion, because the thirtieth day would have fallen on a Sunday, he had until the close of business on

On September 29, 2015, Martin filed a second motion seeking a change of judge ("Second Change of Judge Motion"). Martin alleged that the September 21, 2015 docket entry indicated that Judge Rolf had an *ex parte* communication with the State regarding the merits of the Rule 29.15 Motion, requiring disqualification. The Second Change of Judge Motion was argued on October 5, 2015 and November 2, 2015, and was denied on November 2, 2015. The motion court entered findings of fact and conclusions of law denying the Rule 29.15 Motion on November 2, 2015 ("Judgment"). After Martin's motion to amend the Judgment was not ruled within ninety days, the Judgment became final for purposes of appeal.

Martin filed this timely appeal. Additional facts will be discussed where relevant to Martin's points on appeal.

## Standard of Review

■ Appellate review of the denial of an application for change of judge is for abuse of discretion. *Burgess v. State*, 342 S.W.3d 325, 328 (Mo. banc 2011) (citing *Smulls v. State*, 10 S.W.3d 497, 504 (Mo. banc 2000) ("*Smulls II*")). A court " 'abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Dieser v. St. Anthony's Medical Center*, 498 S.W.3d 419, 434 (Mo. banc 2016) (quoting *Nelson v. Waxman*, 9 S.W.3d 601, 604 (Mo. banc 2000)).

■ Appellate review of a motion court's findings on a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(k); *Skillicorn v. State*, 22 S.W.3d 678, 681 (Mo. banc 2000). Clear error occurs only where a review of the entire record leaves this court with the definite and firm impression that a mistake has been made. *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996).

## Analysis

Martin raises five points on appeal. Points One and Two claim error in the denial of the Change of Judge Motion and the Second Change of Judge Motion. Point Three claims error in the denial of Martin's claim of retaliatory sentencing. Points Four and Five claim error in the denial of Martin's claims of ineffective assistance of counsel based on the failure to object to a "hammer" instruction and the failure to investigate and call witnesses who could have impeached T.H.'s credibility.

We begin by addressing Point Three on appeal, as resolution of that point influences the resolution of Point One.

### Point Three: The motion court did not clearly err in denying Martin's claim that he was sentenced in retaliation for exercising his right to testify and to deny his guilt

■ In his third point on appeal, Martin claims that the motion court clearly erred in denying his claim of retaliatory sentencing because the imposition of a lawful sentence nonetheless violates Amendments V, VI, and XIV of the United States

---

September 21, 2015 to file proposed findings of fact and conclusions of law. *See* Rule 44.01(a). Martin does not claim error, however, because a docket entry reflected denial of the Rule 29.15 Motion before Martin's proposed findings and conclusions were filed. In

any event, the motion court did not enter its written judgment denying the Rule 29.15 Motion until November 2, 2015, well after Martin's proposed findings and conclusions were filed.

Constitution, and Article I, sections 10 and 18(a) of the Missouri Constitution, if based on a judge's unilateral determination that a defendant "committed perjury" while testifying and denying his guilt.[4] Martin does not argue that the maximum sentence was in part imposed in retaliation for his exercise of the right to plead not guilty or to insist on going to trial. Rather, Martin alleges that the maximum sentence was in part imposed in retaliation for Martin's exercise of the right to testify in his own defense[5] and the corresponding Fifth Amendment privilege against self-incrimination.

No Missouri case has specifically addressed whether it is appropriate to consider the perceived veracity of a defendant's trial testimony in imposing sentence. However, this subject has been addressed by the United States Supreme Court.

■ The federal constitution does not relieve a criminal defendant from compliance with "rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). These rules include the obligation to take and abide by an oath to tell the truth, administered prior to testifying.

The right guaranteed by law to a defendant is narrowly the right to testify truthfully in accordance with the oath-unless we are to say that the oath is mere ritual without meaning. This view of the right involved is confirmed by the unquestioned constitutionality of perjury statutes, which punish those who willfully give false testimony.

*United States v. Grayson*, 438 U.S. 41, 54, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (*superseded by statute on unrelated grounds as stated in Barber v. Thomas*, 560 U.S. 474, 482, 130 S.Ct. 2499, 177 L.Ed.2d 1 (2010)). " '[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come.' " *Id.* at 50, 98 S.Ct. 2610 (quoting *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)). Thus, if a defendant exercises his right to testify, a trial court is not prohibited from considering the defendant's testimony in weighing remorse or accountability in imposing sentence. "A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing." *Id.* In fact, *Grayson* rejected the argument

---

**4.** Because we conclude that Martin's claim of retaliatory sentencing is without merit as a matter of law, we do not address whether the claim was cognizable in this Rule 29.15 proceeding. Barring requirements of fundamental fairness, and the presence of exceptional circumstances, a claim of retaliatory sentencing is not cognizable in a Rule 29.15 proceeding because it could have been raised on direct appeal. *Glaviano v. State*, 298 S.W.3d 112, 115–16 (Mo. App. W.D. 2009). As we explain in addressing Point One, *infra*, we need not determine whether Judge Rolf would have been a material witness to Martin's claim of retaliatory sentencing, an exceptional circumstance that might have excused Mar-

tin's failure to raise his claim on direct appeal.

**5.** In *Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the United States Supreme Court held that "[t]he right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution," including the Fourteenth Amendment's Due Process Clause, the Compulsory Process Clause of the Sixth Amendment, and as "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony."

that consideration of a defendant's perceived lack of veracity in imposing sentence would effectively chill exercise of the constitutional right to testify:

> Assuming, *arguendo*, that the sentencing judge's consideration of defendants' untruthfulness in testifying has any chilling effect on a defendant's decision to testify falsely, that effect is entirely permissible. There is no protected right to commit perjury.

*Id.* at 54. *See U.S. v. Dunnigan,* 507 U.S. 87, 96–98, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (addressing the continued viability of *Grayson* following adoption of Federal Sentencing Guidelines) *(abrogated on other grounds by United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997)). In light of *Grayson,* which Martin's Brief fails to acknowledge or address, Martin's claim that his sentence violated the United States Constitution is without merit as a matter of law.

■■■■ Martin's Brief also fails to develop any argument that the result should be different under Missouri's Constitution. Missouri constitutional provisions implicated by Martin's point on appeal have been interpreted congruently to their federal counterparts.[6] And though not precisely on point, Missouri precedent analogously permits a sentencing court to consider the defendant's lack of remorse or accountability in imposing sentence. *See State v.*

*Collins,* 290 S.W.3d 736, 747 (Mo. App. E.D. 2009) (affirming on direct appeal a sentence imposed after a trial court considered the defendant's "lack of remorse and failure to take appropriate responsibility for his actions"); *State v. Palmer,* 193 S.W.3d 854, 856–57 (Mo. App. S.D. 2006) (affirming on direct appeal a sentence imposed after trial court commented following a sentencing hearing that it was "disturbing to see you still not taking responsibility for" a robbery, and holding that the comment did not mean trial court factored in a failure to incriminate in assessing punishment); *State v. Lindsey,* 996 S.W.2d 577, 579 (Mo. App. W.D. 1999) (affirming on direct appeal a sentence nine times longer than that recommended by State where trial court admonished the defendant for "accepting absolutely no responsibility or even acknowledging any wrongdoing"). In fact, section 557.036.1 provides:

> Upon a finding of guilt, the court shall decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly.

*Grayson* instructs that a defendant's trial testimony, where perceived to be willfully dishonest, is a relevant factor in assessing

---

**6.** Article I, section 10 of the Missouri Constitution is an exact duplicate of Amendment XIV of the federal constitution, and the corollary due process provisions have been interpreted "consistently" and "as equivalent." *Doe v. Phillips,* 194 S.W.3d 833, 841 (Mo. banc 2006); *Jamison v. State,* 218 S.W.3d 399, 405 n. 7 (Mo. banc 2007); *State ex rel. Houska v. Dickhaner,* 323 S.W.3d 29, 33 n. 4 (Mo. banc 2010). And, "[e]ach time our courts have compared the state and federal constitutional provisions, they have concluded that art. I, section 18(a) of the Missouri Constitution protects the same rights as the Sixth

Amendment of the United States Constitution." *State v. Hester,* 801 S.W.2d 695, 697 (Mo. banc 1991). Finally, though Martin does not cite Article I, section 19 of the Missouri Constitution, "Missouri courts analyze issues regarding the privilege against self-incrimination claimed under the Missouri constitution in a manner consistent with analysis of those arising under [the Fifth Amendment to] the federal constitution." *State v. Werner,* 9 S.W.3d 590, 595 (Mo. banc 2000); *State ex rel. Munn v. McKelvey,* 733 S.W.2d 765, 767 (Mo. banc 1987); *State ex rel. Nothum v. Walsh,* 380 S.W.3d 557, 562 (Mo. banc 2012).

the character of the defendant, specifically the defendant's remorse and accountability. 438 U.S. at 54, 98 S.Ct. 2610.

Because the Missouri constitutional provisions implicated by Martin's argument have been interpreted consistently with corollary rights under the federal constitution,[7] we conclude that *Grayson* is controlling. We thus reject Martin's assertion that consideration of the veracity of a defendant's trial testimony in imposing sentence violates the Missouri Constitution.

■ We are not suggesting that in imposing sentence, a trial judge should consider the mere fact that a defendant's trial testimony was unsuccessful in persuading a fact-finder of the defendant's innocence.

Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, *we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine-with a consciousness of the frailty of human judgment-whether that testimony contained willful and material falsehoods,* and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society.

*Id.* at 55. (Emphasis added.) Here, the record reflects that the trial court believed Martin's trial testimony was "ridiculous" and "inconceivable." The trial court appropriately relied on that assessment as a factor in electing to impose the maximum sentence.[8]

The motion court did not clearly err in denying Martin's claim of retaliatory sentencing on the merits. Point Three on appeal is denied.

***Point One: Martin's claim that the motion court abused its discretion in denying the Change of Judge Motion is without merit given our resolution of Point Three***

Martin complains in his first point on appeal that the motion court clearly erred in denying the Change of Judge Motion because Judge Rolf was a material witness to Martin's claim of retaliatory sentencing. At the conclusion of the hearing on Martin's Rule 29.15 Motion, Martin's counsel attempted to call Judge Rolf as a witness. Judge Rolf declined, and permitted counsel to make a record explaining what he would have asked, and why he believed Judge Rolf was a material witness.

I would have, you know, asked you what you do, who you are, whether you oversee criminal trials in Lafayette County, whether you were the judge in this case, whether you recall the trial. I suspect, as you've told me previously ... you would say you do not.

I would point you to the transcript to where you said [Martin] had lied on the stand and said any leniency—any chance of leniency he had went away when he lied on the witness stand.

I would elicit testimony from you that you believe you have lawful ability to punish someone more harshly for exer-

7. Martin's Brief cites to decisions from other states interpreting that state's constitution or laws to reach a conclusion at variance with *Grayson*. Given the congruent interpretations afforded Missouri and federal constitutional provisions implicated by Martin's point on appeal, other states' decisions electing not to follow *Grayson* are of no precedential value.

8. As we explained, *supra*, other factors also affected the trial court's decision to impose the maximum sentence, including the fact that Martin had prior convictions and was on parole when he sexually assaulted T.H., and evidence revealed in the Sentencing Assessment Report suggesting that Martin was distributing drugs in jail.

cising a constitutional—that you don't generally have the ability to punish someone more harshly for exercising a constitutional right, but that it is a defendant's right to testify on his own behalf. And that you believe you have the right to sentence someone more harshly, as you've previously told me at I believe our hearing over the motion to recuse, because you believe they lied on the stand.

We need not address when, or whether, a trial judge should be characterized as a material witness to a retaliatory sentencing claim. The testimony Martin desired to elicit from Judge Rolf would not have established retaliatory sentencing as a matter of law. Judge Rolf's consideration of the perceived veracity of Martin's trial testimony in imposing sentence was constitutionally permissible as explained in our discussion of Point Three. Point One on appeal is denied.

### Point Two: The motion court did not abuse its discretion in denying Martin's Second Change of Judge Motion

■ Martin's second point on appeal claims that the Second Change of Judge Motion complied with the procedures for securing a change of judge for cause set forth in sections 508.090 through 508.140 because it was verified and alleged facts, accepted as true, requiring disqualification.[9] Specifically, Martin alleges that the September 21, 2015 docket entry created an appearance that Judge Rolf's impartiality might reasonably be questioned, requiring him to recuse pursuant to Rule 2–2.11(A)(1), or alternatively to assign the

motion to a different judge for determination.

"Section[s] 508.090 [et seq.] contain[ ] the statutory provisions governing a request for a change of judge for cause." *State v. Isaiah*, 874 S.W.2d 429, 436 (Mo. App. W.D. 1994). "[S]ince Rule 51.05 is inapplicable [in post-conviction proceedings], the provisions of sections 508.090–.140 control." *Id.*

■ Section 508.090.1(1) provides that a judge "may be disqualified in any civil suit ... [if] the judge is ... prejudiced." Section 508.140.1 provides that if an application for change of judge for cause "is sufficient, the judge shall be disqualified." To be "sufficient" an application for change of judge for cause must satisfy procedural and substantive requirements. *Gordon on Behalf of G.J.E. v. Epperly*, 504 S.W.3d 836, 846 (Mo. App. W.D. 2016); *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 696–97 (Mo. App. E.D. 1990). Martin alleges the Second Change of Judge Motion is procedurally sufficient because it was verified. Martin alleges the Second Change of Judge Motion is substantively sufficient because it alleged facts, taken as true, that required recusal pursuant to Rule 2–2.11(A).

#### (i) *Procedural sufficiency*

■ Procedural sufficiency refers to an application's obligation to "meet the requirements of time (Section 508.120), of notice (Section 508.140), as well as of form (Section 508.130)." *State ex rel. Wesolich*, 794 S.W.2d at 696–97; *see also Gordon on Behalf of G.J.E.*, 504 S.W.3d at 846. Martin's point on appeal addresses only the

9. Rule 51.05(a), which authorizes an automatic change of judge upon timely request in civil proceedings, "does not apply in post-conviction proceedings." *Thomas v. State*, 808 S.W.2d 364, 367 (Mo. banc 1991). "In post-conviction proceedings, unlike the automatic change of judge in civil proceedings under Rule 51.05, the movant must show a disqualifying bias and prejudice to receive a change of judge." *State v. Tivis*, 948 S.W.2d 690, 699 (Mo. App. W.D. 1997).

form of the Second Change of Judge Motion.

Section 508.130 requires an application to set forth the cause for disqualification and when knowledge of the cause was obtained, and provides that the applicant "shall annex thereto an affidavit, made by himself, his agent or attorney, to the truth of the petition, and that affiant has just cause to believe that he cannot have a fair trial on account of the cause alleged." Verification of an application will substitute for the requirement to annex an affidavit. *State ex rel. Wesolich*, 794 S.W.2d at 696.

Contrary to Martin's representation, the Second Change of Judge Motion was not verified. Nor were affidavits annexed to the motion when it was filed. Martin did submit affidavits in support of the Second Change of Judge Motion on October 20, 2015, approximately three weeks after the motion was filed.

Our Supreme Court has determined that section 508.130 "does not have any time limit . . . for annexing the [required] affidavits," though the application for change of judge "must allege when [the movant] obtained the information and knowledge of the existence of the cause for disqualification" to "discourage surprise or undue delay in bringing disqualifying information to the judge's attention." *State ex rel. Ferguson v. Corrigan*, 959 S.W.2d 113, 115 (Mo. banc 1997). The Supreme Court explained that the recusal canon in the Code of Judicial Conduct "has no requirement for . . . the filing of an affidavit," and "suggests that a judge is required to pass on the merits of a claim of bias and prejudice or other cause for recusal, whenever such claim is brought to the judge's attention." *Id.* Thus, claims of prejudice requiring recusal "cannot be finessed by asserting a procedural defect in the motion." *Id.* So long as a change of judge application contains the required substantive content, statutorily required affidavits can be later filed.[10] *Id.* at 116.

Here, Martin filed affidavits supporting the Second Change of Judge Motion before the motion was denied on November 2, 2015. In light of *State ex rel. Ferguson*, we conclude that the Second Change of Motion was procedurally sufficient.[11]

---

10. *State ex rel. Ferguson* does not excuse a party from the statutory obligation to support an application for change of judge with affidavits, but prohibits denial of an application merely because affidavits are not attached when the application is filed. 959 S.W.2d at 116 (directing that on remand to consider the application for change of judge, post-conviction movant or his attorney should be permitted "to annex their affidavit in support of the facts contained in the motion for change of judge and to proceed in a manner consistent with that motion").

11. Martin's second point on appeal does not address the timeliness of his Second Change of Judge Motion. *State ex rel. Ferguson* held that section 508.120, which "contains time limits for filing an application for change of judge," applies by its plain terms only to "a 'defendant' who is seeking to disqualify a judge," and thus has no application to post-conviction movants who are "not the defendant in a [post-conviction] proceeding." 959 S.W.2d at 115. However, the Supreme Court nonetheless recognized that "[u]ndue delay will permit [a] claim [of judicial prejudice] to be treated as waived." *Id.* (citing *Erhart v. Todd*, 325 S.W.2d 750, 754 (Mo. 1959)).

Ordinarily, an application for change of judge filed *after* a case has been tried or a matter is under submission is deemed untimely by this standard. *See, e.g., State ex rel. Nassau v. Kohn*, 731 S.W.2d 840, 842 (Mo. banc 1987) (holding that an application for change of judge for cause filed in a probate proceeding pursuant to section 472.060 "is not untimely filed unless it is clear from the record that the 'trial' or hearing of the matter has commenced or the cause ordered taken under submission by the court"); *Jenkins v. Andrews*, 526 S.W.2d 369, 372 (Mo. App. K.C. Dist. 1975) (" '[W]e do not hesitate to say that,

### (ii) *Substantive Sufficiency*

██ Section 508.090.1(1) provides that a judge "may be disqualified in any civil suit . . . [if] the judge is . . . prejudiced." Substantive sufficiency refers to an application's obligation to "allege facts which warrant disqualification for cause." *State ex rel. Wesolich*, 794 S.W.2d at 697; *see also Gordon on Behalf of G.J.E.*, 504 S.W.3d at 846.

██ Martin's Second Change of Judge Motion alleges prejudice based on Rule 2–2.11(A) of the Code of Judicial Conduct. "Rule 2–2.11(A) sets the standard for when a judge should recuse in a proceeding." *Anderson v. State*, 402 S.W.3d 86, 91 (Mo. banc 2013). "Rule 2.2–11(A) provides that '[a] judge shall recuse himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned.'" *Id.* "The rule is not limited to actual prejudice and also requires recusal when 'a reasonable person would have factual grounds to find an appearance of impropriety and doubt the impartiality of the court.'" *Id.* (quoting *State v. Smulls*, 935 S.W.2d 9, 17 (Mo. banc 1996) ("*Smulls I*")). "A reasonable person . . . is not one who is ignorant of what has gone on in the courtroom before the judge. Rather, the reasonable person knows all that has been said and done in the presence of the judge." *Haynes v. State*, 937 S.W.2d 199, 203 (Mo. banc 1996).

"In construing our Code of Judicial Conduct,[12] our courts have relied on United States Supreme Court cases construing similar language in federal statutes. One such example is *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)." *Id.* "*Grinnell* involved a construction of 28 U.S.C. section 144 which, in words similar to our Code of Judicial Conduct, provided the judge 'shall proceed no further' when it was alleged that the judge 'had a personal bias or prejudice either against [the moving party] or in favor of the adverse party . . . .'" *Id.* (quoting *Grinnell*, 384 U.S. at 583, 86 S.Ct. 1698). "The [United States Supreme Court] concluded that . . . 'alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Id.* (quoting *Grinnell*, 384 U.S. at 583, 86 S.Ct. 1698). Later, in *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), after considering *Grinnell*, the United States Supreme Court concluded that "'[i]t would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' *factor*, than an 'extrajudicial source' *doctrine* in recusal jurisprudence.'" *Id.* (quoting *Liteky*, 510 U.S. at 554–55, 114 S.Ct. 1147) (emphasis in original). "The [United States Supreme Court] went on to articulate a second factor. A disqualifying bias includes one springing from the facts of the case if such bias is 'so extreme as to display clear inability to render fair judgment.'" *Id.* (quoting *Liteky*, 510 U.S. at 551, 114 S.Ct. 1147).

---

after the issues have been made up and tried, it is too late for complainant to come in and swear the judge is prejudiced,'" though suggesting that "'special facts . . . to account for [an] untimely application'" might afford an exception to this general rule) (quoting *Ex Parte Cox*, 10 Mo. 742, 743 (1847)). Martin's claimed cause for disqualification arose after submission of the Rule 29.15 Motion and before Judgment was entered. Because the Sec-

ond Change of Judge Motion was filed promptly after relevant information came to Martin's attention, we conclude that the Second Change of Judge Motion was timely filed.

12. At the time of *Haynes*, the provision in the Code of Judicial Conduct addressing recusal for bias or prejudice was found in Rule 2, Canon 3 D(1)(a).

After addressing *Grinnell* and *Liteky*, our Supreme Court concluded that "[t]he threads common in all . . . cases requiring recusal is either a fact from which pre-judgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose." *Id.* at 204. *Haynes* thus deemed "unacceptable" a request to read into the Code of Judicial Conduct "an even more demanding standard than is expressed in *Liteky*," that would "require recusal where 'the judge's impartiality might reasonably be questioned,' regardless of any objective facts indicating a bias having an extrajudicial source or facts indicating a bias making fair judgment impossible." *Id.* *Haynes* explained that "the 'might reasonably be questioned' standard, without a factual context, is subjective, leaving appellate courts at liberty to find a disqualifying bias from any hostile word, a maximum prison sentence or even an adverse discretionary ruling. Such a vague standard is unworkable." *Id.* *Haynes* thus concluded that recusal is not required unless "there is . . . a factual basis from which a reasonable person could infer that [the challenged judge] had prejudged an[ ] issue in the case or that [the challenged judge] had based his . . . ruling on some illegitimate factor." *Id.*

This standard for determining disqualifying bias or prejudice was reinforced in *Anderson*, where the Supreme Court held that Rule 2–2.11(A)(1) requires disqualification only "[w]hen [a] judge appears to be biased by 'an extrajudicial source [that] results in an opinion on the merits on some basis other than what the judge has learned from the judge's participation in a case.'" 402 S.W.3d at 91–92 (quoting *Smulls II*, 10 S.W.3d at 499). *See also Burgess*, 342 S.W.3d at 328 (holding that it was not an abuse of discretion to deny a movant's request for a change of judge where the application "failed to allege the existence of any extrajudicial source of disqualifying prejudice").

"Prejudice" pursuant to section 508.090.1(1) aligns with the duty to recuse pursuant to Rule 2–2.11(A). "It is not every prejudice . . . that rises to a level that is legally sufficient to disqualify a judge from the duty of hearing a case." *State ex rel. Wesolich*, 794 S.W.2d at 697. Instead, alleged "[b]ias and prejudice to be disqualifying [pursuant to section 508.090] must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* (citing *Grinnell*, 384 U.S. at 583, 86 S.Ct. 1698).[13] "A judge should withdraw from a case only when the facts show prejudice to such an extent so as to evince a fixed prejudgment and to preclude a fair weighing of the evidence." *Id.* at 698.

To be substantively sufficient, the Second Change of Judge Motion was thus required to allege a factual basis from which a reasonable person could infer that Judge Rolf had prejudged an issue in the case or that Judge Rolf based his denial of the Rule 29.15 Motion on some illegitimate factor. The Second Change of Judge Motion does not satisfy this standard.

---

13. *State ex rel. Wesolich* observed that because recusal pursuant to the Code of Judicial Conduct is required whenever "impartiality might reasonably be questioned," the duty to recuse pursuant to "the canon is broader than the statute," referring to section 508.090.1. 794 S.W.2d at 698. However, this observation cannot be reconciled with, and appears plainly to have been overruled by, our Supreme Court's later holding in *Haynes*, where the request to impose a heightened duty to recuse under the Code of Judicial Conduct was firmly rejected as "unworkable." 937 S.W.2d at 204.

The Second Change of Judge Motion alleged or referred to these facts:

(a) Martin's counsel received an e-mail notice on September 28, 2015 from the Missouri Courts eFiling System reflecting two docket entries on September 21, 2015 at 12:20 p.m. and 1:46 p.m.

(b) The September 21, 2015 docket entry provided:

**Case Review Held**

Respondent appears by Kristen Ellis. Attorney for movant does not appear. The Court find[s] he had not submitted a proposed judgment as directed.

**Motion Denied**

The Court denies the Movant's Motion to Vacate. Respondent to prepare Judgment

**Other Final Disposition**

(c) An August 21, 2015 docket entry after the conclusion of the evidentiary hearing on Martin's Rule 29.15 Motion provided:

**Court Trial Held**

Recorded Proceeding

Movant appears in person and by attorney Jonathan Sternberg. State/Respondent appears in person by Prosecutor Kristen Ellis. The Motion to Vacate Sentence is taken up and heard and is taken under advisement. The Court instructs Counsel to submit proposed Findings of Fact and Conclusions and a judgment within thirty (30) days.

**Cause Taken Under Advisement**

**Sound Recording Log Sheet** [14]

**Case Review Scheduled**

Scheduled For: 21–Sep–2015; 3:00 PM; DENNIS ALLEN ROLF;

**Setting:** 0; Lafayette Counsel to have presented Findings of Fact and a judgment

(d) Martin's counsel received an e-notice of the August 21, 2015 docket entry on August 24, 2015.

(e) A hearing on the merits of Martin's Rule 29.15 Motion was not noticed for September 21, 2015.

(f) Martin's counsel e-filed proposed findings and conclusions around 4:00 p.m. on September 21, 2015.

These facts, accepted as true, indicate that the State was present in Judge Rolf's courtroom on September 21, 2015 though Martin was not, and that Judge Rolf denied the Rule 29.15 Motion and directed the State to prepare a judgment on the same day.

Martin alleges that Judge Rolf discussed the merits of his Rule 29.15 Motion with the State on September 21, 2015. However, Martin's allegation is merely conjecture and speculative. The objective facts indicate nothing about the content of the *ex parte* contact between Judge Rolf and the State beyond Judge Rolf directing the State to prepare a judgment reflecting denial of the Rule 29.15 Motion. The objective facts allege no "factual basis from which a reasonable person could infer that [Judge Rolf] ... prejudged an[ ] issue in the case or that [Judge Rolf] ... based his ... ruling on some illegitimate factor." *Haynes*, 937 S.W.2d at 204. As the Supreme Court observed in *Haynes*, "[a] reasonable person ... is not one who is ignorant of what has gone on in the courtroom before the judge. Rather, the reasonable person knows all that has been said and done in the presence of the judge." *Id.* at 203. A reasonable person would thus know that at the conclusion of Martin's August

14. Though the docket entry suggests a sound recording was made, Martin's pleadings presented to the motion court in connection with the Second Change of Judge Motion advised that "there is no transcript" from September 21, 2015. [L.F. 149]

21, 2015 evidentiary hearing, the record was closed and the Rule 29.15 Motion was taken submission. A reasonable person would know that the motion court had requested proposed findings of facts and conclusions of law within 30 days and had set the matter for "case review" on the 31st day, indicating he would be prepared to rule on the submitted Rule 29.15 Motion at that time. A reasonable person would interpret the August 21, 2015 docket entry scheduling "case review" for September 21, 2015 just as Martin's counsel did—as a "tickler" to trigger the motion court's disposition of the Rule 29.15 Motion. [L.F. 150] "[A] reasonable person would [not] have a factual basis to ... doubt the impartiality of the court" merely because the September 21, 2015 case review docket entry noted an appearance by the State. *Haynes*, 937 S.W.2d at 203. *See State v. Nunley*, 923 S.W.2d 911, 919 (Mo. banc 1996) (holding that judge was not required to recuse where "[t]here [was] no evidence other than defendant's assertion 'secret' meetings ... occurred" to discuss judge's reappointment to a case).

Martin compares his case to *In the Interest of K.L.W.*, 131 S.W.3d 400 (Mo. App. W.D. 2004), where we concluded that recusal was required by an *ex parte* contact. However, the facts in *K.L.W.* underscore the substantive insufficiency of Martin's Second Change of Judge Motion.

In *K.L.W.*, a family court commissioner received four *ex parte* letters from a former foster parent whose interests were at odds with a child's current foster parent. *Id.* at 402–04. The commissioner subsequently permitted adoption of the child by the former foster parent who authored the *ex parte* letters, and denied a competing petition for adoption filed by the current foster parent. *Id.* at 403–04. The current foster parent appealed, and argued that the commissioner improperly denied a motion for change of judge filed by the guardian ad litem. *Id.*

The objective facts supporting the request for recusal were as follows: (i) that the commissioner received four *ex parte* letters from the former foster parent, and a handwritten note bearing the commissioner's initials directed that the letter be placed in the legal file and that a copy of each letter be sent to the parties; (ii) that after receiving the fourth letter, which included a request that the author be provided notice of hearings in the case, the commissioner ordered that the author be placed on the "copy list;" (iii) that just prior to the fourth letter, the commissioner permitted the author of the *ex parte* letters to remain in the courtroom for a review hearing over the Division's objection that she was not a party to the case, nor any longer the foster parent for the child; and (iv) that after this hearing concluded, the foster parent who authored the letters returned to the courtroom and spoke privately with the commissioner at the bench and upon exiting the courtroom, was seen "high-fiving" several individuals. *Id.* at 402–04.

Based on these objective facts, we found the commissioner's impartiality might reasonably be questioned. *Id.* at 406. We concluded "that, if [the notes on top of the various letters] were found to have been written by the commissioner, a reasonable person would have a factual basis to find an appearance of impropriety on the part of the commissioner and to therefor doubt the impartiality of the court." *Id.* (citation omitted). We found that "if the hand-written comments on [the fourth letter] [were] written by the commissioner or placed there at his instruction, those comments clearly give the appearance that the commissioner had read the letter and was adding [its author] to the 'copy list' in response to her request that she receive

notice of future hearings in the case." *Id.* "From these notes, a reasonable person would have a factual basis for believing that the commissioner had violated [the Code of Judicial Conduct prohibiting *ex parte* communications] *by reading and acting upon the letter's contents*." *Id.* (Emphasis added.) "Furthermore, a reasonable person could find the appearance of impropriety in the commissioner's sua sponte addition of [the letters' author] to the 'copy list' without any formal motion before the court or any chance for the parties to voice opposition ... [since the letters' author] was not a party to the action and was not [the child's] current custodian." *Id.*

*K.L.W.* represents the classic scenario where objective facts established an appearance of a disqualifying bias or prejudice emanating from an extrajudicial source and resulting in an opinion on the merits on some basis other than what the commissioner learned from participation in the case. *Haynes*, 937 S.W.2d at 202. The objective facts in *K.L.W.* stand in stark contrast, however, to Martin's Second Change of Judge Motion. Martin alleges no objective fact identifying extrajudicial information imparted to Judge Rolf by the State. Martin alleges no objective fact suggesting that Judge Rolf acted on extrajudicial information imparted by the State to deny the Rule 29.15 Motion. The only objective fact Martin alleges is that the State appeared in Judge Rolf's courtroom on a date when Martin did not.

The mere fact of an *ex parte* contact is not, however, what motivated the result in *K.L.W.* The result in *K.L.W.* was motivated by objective facts which revealed the content of the *ex parte* contacts, and which suggested the commissioner reviewed and acted upon the content of the *ex parte* contacts. An *ex parte* contact is not in and of itself sufficient to permit a reasonable person to infer the existence of disqualifying bias emanating from an extrajudicial source and resulting in an opinion on the merits on some basis other than what a judge learned from participation in the case. *Haynes*, 937 S.W.2d at 202. To hold otherwise would be to ignore the fact that *Haynes* expressly rejected an attempt to read the Code of Judicial Conduct to require recusal "where 'the judge's impartiality might reasonably be questioned,' regardless of any objective facts indicating a bias having an extrajudicial source or facts indicating a bias making fair judgment impossible." *Id.* at 204. Instead, recusal is not required if "there is not a factual basis from which a reasonable person could infer that [the challenged judge] had prejudged an[ ] issue in the case or that [the challenged judge] had based his ... ruling on some illegitimate factor." *Id.* The Second Change of Judge Motion does not allege objective facts which satisfy this standard. Even now, Martin has yet to identify any extrajudicial information that came to Judge Rolf's attention on September 21, 2015, or any aspect of Judge Rolf's ruling on the Rule 29.15 Motion that could be attributed to reliance on extrajudicial information.[15]

**15.** Had Martin learned of additional objective facts supporting his Second Change of Judge Motion, he would have been authorized to bring those facts to our attention. *See Anderson*, 402 S.W.3d at 92 (noting that "in cases in which a trial court may not have considered certain facts relevant to disqualification, an appellate court should determine whether those facts are sufficient to require recusal or, at a minimum, a hearing on the record") (citing *Smulls II*, 10 S.W.3d at 499); *Smulls II*, 10 S.W.3d at 501, 503–04 (holding that although "there were no facts of the type required by Haynes presented to the [challenged judge] that would suggest any reason for his recusal," information developed months later in a subsequent deposition of a different judge should be consider by the ap-

Similar to *K.L.W.* is *Anderson*, where a motion court made multiple on the record "references to the judge's out-of-court conversations with the foreperson of the jury" in Anderson's trial, on subjects implicated by Anderson's post-conviction motion. 402 S.W.3d at 92–93. The record also established that the motion court gave counsel a magazine article implicating the credibility of Anderson's mental health expert under circumstances that suggested the judge had procured the article on his own. *Id.* at 93. Our Supreme Court found the content of the conversations with the jury foreperson and the magazine article to be clearly extrajudicial, and found that "[b]ased on the motion court's statements throughout the proceedings on [Anderson'] Rule 29.15 motion, a reasonable person would have factual grounds to believe the motion court relied on its conversations with the jury foreperson, the [magazine] article or both in deciding issues in the case." *Id.* at 94. In contrast, Martin alleges no extrajudicial knowledge or information that came (or that could have come) to Judge Rolf's attention because the State appeared in his courtroom on September 21, 2015, and alleges no factual basis to believe that Judge Rolf relied on extrajudicial knowledge or information to deny the Rule 29.15 Motion.

The same contrast is evident when comparing Martin's case to *Moore v. Moore*, 134 S.W.3d 110 (Mo. App. S.D. 2004). In *Moore*, a family court commissioner received an investigative report from a domestic relations officer that no party had access to; the commissioner issued findings and recommendations on temporary custody the next day; and the investigative report "figured prominently in [the commissioner's] decision to transfer temporary custody," as the commissioner's order included a finding that referred to the

investigative report. *Id.* at 112, and n. 4. Based on these objective facts, the court concluded that the commissioner's receipt of the investigative report was an *ex parte* communication that "created the appearance of impropriety which would cause a reasonable person to doubt [the commissioner's] ability to preside over the motion to modify as an impartial arbiter." *Id.* at 115.

■ *K.L.W.*, *Anderson*, and *Moore* instruct that an *ex parte* contact alone is insufficient to establish disqualifying bias or prejudice. Instead, proof of a disqualifying bias or prejudice requires the assertion of objective facts suggesting that as a result of an *ex parte* contact, a reasonable person could conclude that a judge received extra-judicial information which influenced a decision on the merits.

Consistent with this conclusion is our recent decision in *Francis v. Wieland*, 512 S.W.3d 71 (Mo. App. W.D. 2017). There, mother argued that the trial judge erroneously denied her motion to disqualify which had alleged, relevant to this case, *ex parte* contacts in the form of: (i) father's submission of proposed findings of fact and conclusions of law without initially copying mother's counsel; (ii) guardian ad litem's submission of materials by email to the trial court which were copied to counsel, while the court would not accept emailed correspondence or documents from mother's counsel; and (iii) emailed communications from father's counsel that were not placed in the court file. *Id.* at 83. We found that:

> Ex parte communications in the form of email submissions to the court, while not to be encouraged especially when opposing counsel is not copied, do not evidence bias against the party that does not submit them or is not allowed to

pellate court in evaluating the facts in support of disqualification).

submit them. Where the ex parte communication is simply part of the administration of a case, that is, the submission of a proposed judgment ..., and does not involve extended meetings and conversations about the case merits, such communication would not appear to the reasonable layman to "indicate the hardening of the judicial mind" against a party.

*Id.* at 84 (quoting *McPherson v. U.S. Physicians Mut. Risk Retention Group,* 99 S.W.3d 462, 489 (Mo. App. W.D. 2003)). Of particular import to Martin's case, we also found that:

As to whether the court made its custody determination on the basis of anything other than the record, Mother does not indicate in what way the modification judgment reflects a reliance on extrajudicial sources of information about either parent or the child.

*Id.*

Martin's Second Change of Judge Motion suffers the same frailties. The objective facts alleged in the motion establish at best an *ex parte* contact where the State was directed to prepare a judgment reflecting Judge Rolf's denial of the Rule 29.15 Motion—an administrative directive about which the court promptly notified Martin. *See* Code of Judicial Conduct, Rule 2–2.9(A)(1)(a) and (b).[16] Though Martin speculates that Judge Rolf and the State discussed the merits of the Rule 29.15 Motion, Martin "does not indicate in what way the ... [J]udgment reflects a reliance on extrajudicial sources of information about" the merits of the Rule 29.15 Motion. *Francis v. Wieland,* 512 S.W.3d 71,

84 (Mo. App. W.D. 2017). Martin does not identify objective facts suggesting that Judge Rolf had any communication with the State that would "appear to the reasonable layman to 'indicate the hardening of the judicial mind' against a party." *Id.* (quoting *McPherson,* 99 S.W.3d at 489).

The Second Change of Judge Motion was not substantively sufficient. The motion court did not abuse its discretion in denying the motion. *Anderson,* 402 S.W.3d at 92 (holding denial of request to recuse for cause is "reviewed for an abuse of discretion"); *Burgess,* 342 S.W.3d at 328 (holding that where "application failed to allege the existence of any extrajudicial source of disqualifying prejudice, ... the circuit court did not abuse its discretion in denying the application for change of judge"); *State ex rel. Wesolich,* 794 S.W.2d at 699 (holding that if an application "fails to state a cognizable reason for recusal, the judge should deny the motion to disqualify").

 Martin alternatively argues that a different judge was required to hear the Second Change of Judge Motion. We disagree. Section 508.140 provides that "the court or judge, as the case may be, shall consider the application [seeking disqualification for prejudice], and if it is sufficient, the judge shall be disqualified." (Emphasis added.) By its plain terms, section 508.140 directs the challenged court to first determine an application's procedural and substantive sufficiency. *State ex rel. Wesolich,* 794 S.W.2d at 696–97 (holding that "[i]nitially, the [challenged] judge must review the application to determine whether" it is sufficient under section

---

**16.** Martin does not allege that Judge Rolf was required to recuse because he violated Rule 2–2.9 addressing *ex parte* communications. That Rule generally prohibits initiating, permitting, or considering *ex parte* communications "concerning a pending or impending matter," but recognizes several exceptions, including scheduling or administrative communications. The tenor of the Rule makes clear that an *ex parte* contact or communication is not a *per se* basis for alleging disqualifying bias or prejudice.

508.140). "[I]f the motion to disqualify is substantially insufficient, the trial judge is not required to have another judge hear the recusal motion.'" *Anderson*, 402 S.W.3d at 91, n. 1 (quoting *State v. Jones*, 979 S.W.2d 171, 179 (Mo. banc 1998)). "'Given the definition of a disqualifying bias and prejudice, a particular judge is in the best position to determine if recusal is necessary.'" *Smulls II*, 10 S.W.3d at 500 (citing *Nunley*, 923 S.W.2d at 917). Here, because the Second Change of Judge Motion was not substantively sufficient, Judge Rolf was not required to have another judge hear the motion.[17]

Undeterred, Martin argues that Judge Rolf's on-the-record explanation of the *ex parte* contact with the State during the October 5, 2015 hearing on the Second Change of Judge Motion [18] constituted testimony that converted the motion into a contested matter a different judge was required to hear. We disagree.

When the alleged basis for disqualification for cause is an *ex parte* contact, a judge has an obligation to explain the contact or to recuse. *Id.* at 505 n. 7 ("When the record reflects facts indicating potentially improper extra-judicial communications ... the judge should make a statement on the record refuting or explaining the allegations, or the judge should recuse."). This obligation, unique to a claim of prejudice based on an alleged *ex parte* contact, exists independent of the requirement that an application to disqualify for cause be substantively sufficient by alleging objective facts requiring recusal. "If a party cannot state substantively sufficient facts to warrant disqualification without *voir dire*, the judge should deny the motion." *Id.* at 505 (citing *State ex rel. Wesolich*, 794 S.W.2d at 698–99).

Demonstrative of this difference is our holding in *Sewell–Davis v. Franklin*, 174 S.W.3d 58 (Mo. App. W.D. 2005). There, mother filed a motion for new trial, and presented two witnesses who testified that they observed *ex parte* contact between the trial judge, and father and father's attorney, in the hallway on the day of trial. *Id.* at 61. One witness described the contact as "brief," while the other said it continued for about five minutes. *Id.* at 61–62. Mother's motion did not allege facts suggesting the content of the observed conversations, or reliance on the content by the judge, and merely argued that the *ex parte* contact created an appearance of impropriety. *Id.* at 62.

On appeal, we did not find recusal was required because objective facts established disqualifying bias or prejudice pursuant to section 508.090.1(1) or Rule 2–2.11(A). Instead, we faulted the trial court for failing to make a statement on the

---

**17.** That does not mean Judge Rolf was without authority to refer the Second Change of Judge Motion to a different judge for determination, despite its substantive insufficiency. "[B]est practice remains for a circuit judge to have another judge preside over any hearing in which a motion for that judge's recusal or disqualification is to be decided." *Anderson*, 402 S.W.3d at 91, n. 7. However, a judge does not abuse his or her discretion by refusing to refer a change of judge motion to a different judge if the motion is substantively insufficient. *See* section 508.140; *Jones*, 979 S.W.2d at 179.

**18.** On October 5, 2015, Judge Rolf explained on the record that no hearing was scheduled on the Rule 29.15 Motion for September 21, 2015; that no hearing took place on that date; that the State's noted appearance had not been something Judge Rolf directed be included in the docket entry; that the State was present in his court room on September 21, 2015 for a general criminal law day; that the motion court took advantage of that fact to direct the State to prepare a judgment reflecting his denial of the Rule 29.15 Motion; and that no discussion of the merits of the Rule 29.15 Motion occurred.

record refuting or explaining the observed *ex parte* contact. *Id.* at 62.

"When the record reflects facts indicating potentially improper extra-judicial communications ..., the judge should make a statement on the record refuting or explaining the allegations, or the judge should recuse." *Smulls II*, 10 S.W.3d at 505 n. 7. We agree that where bias is alleged as a result of alleged *ex parte* communications between one of the parties and the court, the judge should "err on the side of caution" by placing on the record the pertinent facts showing no objectively reasonable concern. If there is an objectively reasonable concern, the judge, of course, should remove such concern by recusal. *See Interest of K.L.W.*, 131 S.W.3d at 405.

*Sewell–Davis*, 174 S.W.3d at 62–63. The additional burden placed on a trial judge to explain an *ex parte* contact on the record does not eliminate a movant's independent obligation to allege objective facts establishing a disqualifying bias or prejudice. *Smulls II*, 10 S.W.3d at 505 ("If a party cannot state substantively sufficient facts to warrant disqualification without *voir dire*, the judge should deny the motion.").

Here, Martin's Second Change of Judge Motion was not substantively sufficient, and Judge Rolf properly denied the motion. However, because the Second Change of Judge Motion alleged an *ex parte* contact, Judge Rolf was independently obligated to explain the *ex parte* contact on the record or to recuse. Judge Rolf did just that. His explanation showed there was no objectively reasonable concern with respect to his impartiality. *Id.* The explanation did not, however, cure the substantive insufficiency of the Second Change of Judge Motion, nor require referral of the motion to a different judge for determination, given that the explanation reflected no objectively reasonable concern.[19] To hold otherwise would be to hold that every time an *ex parte* contact is alleged, the allegation alone requires a trial judge to either recuse or assign the matter to a different judge for determination. There is no authority for such a broad or rigid construction of section 508.090.1(1) or Rule 2–2.11(A). *Cf. Haynes*, 937 S.W.2d at 204 (holding that Rule 2–2.11(A) does not require recusal "where 'the judge's impartiality might reasonably be questioned,' regardless of any objective facts indicating a bias having an extrajudicial source or facts indicating a bias making fair judgment impossible").

Judge Rolf did not abuse his discretion by denying the Second Change of Judge Motion, or by refusing to refer determination of the motion to a different judge. Point Two is denied.

### *Point Four: The motion court did not clearly err in denying Martin's claim of ineffective assistance of counsel based on the failure to object to, and the agreement to use of, a "hammer" instruction.*

In his fourth point on appeal, Martin claims he received ineffective assistance of counsel because trial counsel failed to object to the trial court's pro-

---

**19.** In *State ex rel. Wesolich*, 794 S.W.2d at 697, the court held, without addressing a particular factual scenario, that "[o]bviously, if the challenged judge is to testify, a different judge must hear the matter." *State ex rel. Wesolich* was not addressing a judge's obligation to make a statement on the record to explain an *ex parte* contact, and cannot be read to equate such a statement with "testimony" offered under oath to contest an application for change of judge that is substantively sufficient, as to do so would render *State ex rel. Wesolich* inconsistent with our Supreme Court's holding in *Smulls II*, 10 S.W.3d at 505 n. 7, and in *Jones*, 979 S.W.2d at 179.

posed "hammer"[20] instruction, and agreed to its submission, resulting in a coerced guilty verdict.[21]

To establish ineffective assistance of counsel, Martin must demonstrate by a preponderance of the evidence that trial counsel failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney and that he was prejudiced by the failure. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is presumed to be effective, and Martin bears a heavy burden to overcome this presumption. Rule 29.15(k); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). To prove prejudice, Martin must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002). If Martin fails to establish by a preponderance of the evidence either the performance or the prejudice prong of the *Strickland* test, then we need not consider the other prong, and will affirm the motion's court's denial of his claim. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

The motion court found that Martin failed to sustain his burden to establish both the performance and prejudice prongs. With respect to the performance prong, the motion court found that trial counsel testified that he did not object to, and in fact agreed to, submission of a "hammer" instruction because he believed Martin would benefit from the instruction.

When the decision was made to submit the "hammer" instruction, the jury had indicated it was split 8–4 in favor of guilt. Martin's attorney testified during the post-conviction hearing that he believed there was a good chance the jury would deadlock, and that if it did, the State would not likely try Martin a second time, or might offer Martin a better plea deal.

Missouri courts have held that "[i]neffective assistance will not lie ... where the conduct involves the attorney's use of reasonable discretion in a matter of trial strategy." *State v. Heslop*, 842 S.W.2d 72, 77 (Mo. banc 1992). "Counsel is vested with wide latitude in defending his client and should use his best judgment in matters regarding trial strategy." *State v. Jones*, 863 S.W.2d 353, 360 (Mo. App. W.D. 1993). "It is only the exceptional case where a court will hold a strategic choice unsound." *Heslop*, 842 S.W.2d at 77. Martin has not demonstrated that this is the exceptional case. Martin's conclusory argument in his Brief that "it cannot ever be an objectively reasonable trial strategy to allow a "hammer" instruction that, as a matter of law, coerces a guilty verdict" is unsupported by authority, and represents nothing more than a self-serving (though not self-proving) statement of opinion. [Appellant's Brief, p. 52]

Because Martin has not sustained his burden to establish that trial counsel's performance was deficient, we need not address the prejudice prong, though we observe that the motion court concluded that

---

**20.** The "hammer" instruction directs jurors to "make every reasonable effort to reach a verdict," though it also instructs jurors to "respect the opinions of your fellow jurors as you would have them respect yours." MAI–CR 3d 312.10. The instruction reminds the jurors that they should not "agree to a verdict of guilty unless ... convinced of the defendant's guilt beyond a reasonable doubt." *Id.*

**21.** Martin's fourth point on appeal also argues that he received ineffective assistance of counsel because trial counsel failed to consult with him before agreeing to the "hammer" instruction. This specific claim was not raised in Martin's Rule 29.15 Motion, and cannot be raised or reviewed on appeal. *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012).

Martin sustained no prejudice by the giving of the "hammer" instruction as, in any case, the jury's deliberations would have continued.

Point Four on appeal is denied.

**Point Five: The motion court did not clearly err in denying Martin's claim of ineffective assistance of counsel based on trial counsel's failure to adequately investigate and call two witnesses who could have presented social media content that would have impeached T.H.'s credibility**

In his fifth point on appeal, Martin alleges that the motion court clearly erred in denying his claim that trial counsel was ineffective for failing to adequately investigate and call two witnesses who could have impeached T.H.'s credibility with testimony about content on T.H.'s Facebook page. Martin claims he was prejudiced by the failure to call these witnesses because of the "he said, she said" nature of resolving whether the encounter with T.H. was consensual.

Martin's burden to establish this claim of ineffective assistance of counsel is controlled by *Strickland's* performance and prejudice prongs, discussed, *supra*, in connection with Martin's fourth point on appeal. In applying the *Strickland* prongs to a claim of ineffective assistance involving the failure to investigate and call a witness, we have held that a movant must demonstrate that: (1) trial counsel knew or should have known of the witness's existence; (2) the witness could have been located through reasonable investigation; (3) the witness would have testified; and (4) the witness's testimony would have produced a viable defense.

*Midgyett v. State*, 392 S.W.3d 8, 12–13 (Mo. App. W.D. 2012) (citing *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005)). Regardless, trial counsel's decision "not to call a witness is presumed to be a matter of trial strategy and a movant must clearly show otherwise before we will find ineffective assistance." *Id.* at 13 (citing *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004)). When the decision whether or not to call a witness is a matter of trial strategy, it is virtually unchallengeable. *Worthington*, 166 S.W.3d at 577.

Martin's fiancé, Taylor Rogers ("Rogers"), and Rogers's friend, Marah Ireland ("Ireland"), testified that they tried to assist Martin's counsel by investigating T.H.'s Facebook page. Rogers asked Ireland to send a friend request to T.H., which was accepted. Rogers and Ireland testified they located posts from late September 2015 (approximately three months after Martin's assault of T.H.) that suggested T.H. was drinking.[22] Rogers and Ireland also testified that they located posts from early July 2015, and thus shortly after Martin's assault of T.H., where T.H. wrote "Why does life have to be so frickin boring," and that she was going out on a date with a man, claiming she had "never been on a date before." Rogers and Ireland testified that they provided "screenshots" of these Facebook posts to Martin's trial counsel.

Martin argued that testimony about the July social media posts would have impeached T.H. because although T.H. claimed she was traumatized by Martin's assault, A.G. first told police T.H. was not traumatized, a report A.G. later recanted. Martin argued that testimony about the September social media posts would have

---

**22.** One post allegedly showed T.H. and A.G. holding an open bottle of whiskey captioned "Girls Just Wanna Have Fun." Another post stated "Pics and Drinks = Best times with the Bestfriend lol :)." A third post stated "Makin' Bacon for the sick friend lol ... gotta love hangovers. Great nite gone bad :(."

impeached T.H.'s credibility because T.H. claimed she had never consumed alcohol before the encounter with Martin.

Martin's trial counsel admitted that he was aware of Rogers and Ireland as possible trial witnesses. Trial counsel said he had no recollection of being advised of the July Facebook posts. Trial counsel admitted that he was aware of the September Facebook posts. Trial counsel testified that he purposefully chose not to elicit testimony about T.H.'s social media posts made after the encounter with Martin because he was fearful the jury would conclude that T.H. had been driven to behaviors suggested in the posts by the trauma of Martin's assault. The motion court found trial counsel's testimony to be credible, and agreed that questioning about T.H.'s social media posts "could have easily turned the jury against" Martin. Martin has not overcome the nearly insurmountable challenge of demonstrating that his trial counsel's strategy in not calling Rogers and Ireland to testify about Facebook posts was unsound. *Worthington*, 166 S.W.3d at 577. Martin thus has not sustained his burden to establish that his trial counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052.

 In addition, Martin has not sustained his burden to establish *Strickland* prejudice, as he has not demonstrated that there is a reasonable probability that the result of his trial would have been different had Rogers and Ireland been called as witnesses at trial. Where a post-conviction claim is based on trial counsel's failure to investigate or call a witness at trial, proof of prejudice requires a persuasive connection between the absent testimony and a viable defense. *Midgyett*, 392 S.W.3d at 12–13. That standard is difficult to meet where omitted testimony is offered solely for purposes of impeachment. "When the testimony of [a witness] would only impeach the state's witnesses, relief on a claim of ineffective assistance of counsel is not warranted" unless "the testimony of the witness would also negate an element of the crime for which a movant was convicted," thus "provid[ing] the movant with a viable defense." *Whited v. State*, 196 S.W.3d 79, 82 (Mo. App. E.D. 2006).

Of course, it is conceivable that impeachment testimony could directly affect belief of a fact central to finding guilt such that its admission would provide a viable defense by creating a reasonable probability that the result of trial would have been different. However, the social media testimony in this case does not come close to this standard. At best, the social media testimony suggested that T.H. was lying about her drinking habits before the encounter with Martin, and that A.G. was lying when she recanted her statement that T.H. was not traumatized by the encounter with Martin. Neither impeached fact would have provided Martin with a viable defense. At best, impeachment of these tangential facts would have permitted Martin to argue the inference that T.H. was also lying about whether the encounter with Martin was non-consensual. The use of impeachment evidence regarding a tangential fact to argue an inference that a witness could be lying about a fact salient to a finding of guilt is not the equivalent of a viable defense, and does not suggest a reasonable probability that the result of a trial would have been different.

That is particularly true where other evidence besides the witnesses' testimony is probative of a fact salient to a finding of guilt. Here, the trial court highlighted the significant volume of evidence *other than T.H.'s testimony* which suggested a non-consensual assault, including expert testi-

mony that T.H.'s injuries were consistent with non-lubrication penile penetration, the lacerations on T.H.'s labia and cervix, the shooting pains experience by T.H. during penetration, and the blood on T.H.'s underwear. That evidence, juxtaposed against (and unexplained by) Martin's testimony that he and T.H. remained fully clothed during their encounter, suggests that there is no reasonable probability that the result of Martin's trial would have been different had Rogers and Ireland been called as witnesses at trial.

Point Five on appeal is denied.

## Conclusion

The motion court's Judgment denying Martin's Rule 29.15 Motion is affirmed.

Hardwick, Judge, joins in the majority opinion

Ahuja, Judge, dissents in separate opinion

Alok Ahuja, Judge, dissenting.

The majority opinion is carefully reasoned and thoughtful. I nevertheless respectfully dissent from the majority's disposition of Martin's second Point, which contends that the circuit court erred in denying his motion for disqualification based on *ex parte* contacts between the court and the prosecution. I do not believe, on the current record, that the court was required to *grant* Martin's disqualification motion. Instead, I believe that Martin's disqualification motion was facially sufficient, and that Judge Rolf was required to refer the motion to another judge for disposition.

As the majority notes, a judge to whom a disqualification motion is directed must determine whether the motion is "suffi-

cient," both procedurally and substantively. A motion for disqualification is substantively sufficient if "it alleges, *on its face*, facts that warrant disqualification for cause under either subsection (1) or (2) of Section 508.090.1." *Gordon on behalf of G.J.E. v. Epperly*, 504 S.W.3d 836, 846 (Mo. App. W.D. 2016) (emphasis added) (citing *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 696–97 (Mo. App. E.D. 1990)). A judge's *ex parte* communications with one of the parties concerning the merits of a lawsuit warrants disqualification, since such communications would give a reasonable person factual grounds to find an appearance of impropriety and to doubt the court's impartiality. *See, e.g.; In re K.L.W.*, 131 S.W.3d 400, 405–06 (Mo. App. W.D. 2004).

Martin's motion alleged that the court had engaged in *ex parte* communications with the State, based on the following docket entries, dated September 21, 2015:

**Case Review Held**

Respondent appears by Kristen Ellis. Attorney for movant does not appear. The Court find[s] he had not submitted a proposed judgment as directed.

**Motion Denied**

The Court denies the Movant's Motion to Vacate. Respondent to prepare Judgment.

**Other Final Disposition**

Taking these docket entries at face value, they reflect: that while Martin's motion for post-conviction relief was under submission, the case was reviewed by the court, with the State's counsel in attendance; that Martin's counsel did not appear; that the court concluded during that case review that Martin "had not submitted a proposed judgment as directed"[1];

---

1. The court was apparently mistaken in faulting Martin for failing to submit a proposed

judgment, for two separate reasons. First, any failure to file a proposed judgment applied

and that the court determined to deny Martin's post-conviction relief motion immediately thereafter.[2]

The majority states that any belief that Judge Rolf discussed the merits of the action with the State "is merely conjecture and speculative." I disagree. The September 21 docket entries states that the court conducted an *ex parte* review of the case with counsel for the State, and that the court entered an adverse dispositive ruling immediately thereafter. While a docket entry setting a "case review" might *normally* be intended merely as a scheduling "tickler" for the court and its administrative staff, the September 21 docket entries indicate that the "case review" in this case was something else. Based on the September 21 docket entries, a reasonable person could infer that—whatever a "case review" may mean in other contexts—in this case it was a hearing in which counsel for the State participated, but of which Martin had no notice, and as a result of which the court ruled in the State's favor. Given that the complaining party is—by definition— excluded from an *ex parte* communication, it is unreasonable to require anything more of Martin's motion to deem it facially

sufficient, justifying further inquiry by a disinterested judge.[3]

The majority also suggests that Martin's motion was deficient because it failed to "identify … any aspect of Judge Rolf's ruling on the Rule 29.15 Motion that could be attributed to reliance on extrajudicial information." The fact that the *ex parte* communication occurred immediately prior to the denial of Martin's post-conviction relief motion is surely significant, however. In any event, a showing that the court actually relied on information gleaned from an *ex parte* communication, and that this information influenced the court's decision in a particular manner, is not required. In *Anderson v. State*, 402 S.W.3d 86 (Mo. banc 2013), the Supreme Court recognized that "the motion court did not expressly state that it decided Mr. Anderson's motion based on extrajudicial information"; to the contrary, the motion court explicitly stated that it was *not* relying on information from *ex parte* contacts with the jury's foreperson in reaching its decision. *Id.* at 93–94. The Supreme Court nevertheless held that recusal was required. *Id.* at 94. The same is true in *In re K.L.W.*, 131 S.W.3d 400 (Mo. App. W.D.

equally to the State, since the court's August 21, 2015 docket entry directed counsel for *both parties* to submit a proposed judgment within thirty days, and neither party had done so as of the time of the case review. <u>Second</u>, Martin's proposed judgment was *not even due* at the time the court found that he had failed to submit them "as directed." The court's August 21 order gave the parties "thirty (30) days" within which to submit their proposed judgments. Under Rule 44.01(a), this 30–day period was extended to Monday, September 21, and did not expire until "11:59:59 central time." Rule 103.06(d).

2. The majority's assertion that Martin's motion "establish[ed] at best an *ex parte* contact where the State was directed to prepare a judgment reflecting Judge Rolf's denial of the Rule 29.15 motion" is inconsistent with what the September 21 docket entries say.

3. This case is wholly unlike *State v. Nunley*, 923 S.W.2d 911 (Mo. banc 1996), cited by the majority. In *Nunley*, there was apparently *no* evidence—other than a criminal defendant's unsupported allegations—to indicate that any *ex parte* communications had occurred. *Id.* at 919. That is simply not the case here, where the court's own official case record states that the court reviewed the case with the State's counsel, at a hearing of which Martin did not have notice. This case is also importantly different from the circumstances in *Francis v. Wieland*, 512 S.W.3d 71 (Mo. App. W.D. 2017). In *Francis*, the e-mail communications at issue established that the *ex parte* contacts addressed administrative matters, not substantive issues, and were thus exempt from the prohibition of Rule 2–2.9(A). *Id.* at 84.

2004), where the challenged commissioner issued an order stating that he had not reviewed the substance of the *ex parte* correspondence, "ha[d] not acted on any matter referenced in said materials," and "categorically denie[d]" the remaining allegations in the disqualification motion. *Id.* at 405–06. Despite the commissioner's statements, this Court reversed the denial of a disqualification motion, and ordered that the motion be referred to another judge. Finally, in *Smulls v. State*, 10 S.W.3d 497 (Mo. banc 2000), the Supreme Court held that referral of a disqualification motion to a disinterested judge was required, even though the content of the challenged judge's extrajudicial communications was "unknown," and the Court could not say that the information contained in the disqualification motion, by itself, was "sufficient to overcome the presumption of [the challenged judge's] fairness and impartiality." *Id.* at 504. The majority opinion imposes an unjustified, and unreasonable, burden on Martin.

I have no reason to doubt the veracity of Judge Rolf's after-the-fact explanation of the September 21 case review. It is not this Court's function to determine the credibility of that explanation, however; nor should Judge Rolf himself be making that determination. It is apparent based on Judge Rolf's oral explanation that "the facts alleged in the application are disputed," necessitating a hearing on the motion. *Gordon*, 504 S.W.3d at 847; *see also Wesolich*, 794 S.W.2d at 697. Judge Rolf is in a unique position to explain his decisionmaking process, and the substance of what occurred (and what did *not* occur) during the September 21 case review. Because he has personal knowledge, from extra-record sources, which disputes the factual allegations in the motion, Judge Rolf was required to refer the disqualification motion to another judge for disposition. *Wesolich*, 794 S.W.2d at 697. Notably, Judge Rolf

initially indicated that he would seek to have another judge assigned to address Martin's disqualification motion; I believe the judge's initial impulse was the correct one.

For these reasons, I would reverse the circuit court's denial of Martin's post-conviction relief motion, and remand the case to the circuit court with directions that Martin's disqualification motion be determined by a disinterested judge. If that other judge were to determine that no basis for disqualification existed, the case could be reassigned to Judge Rolf for re-entry of his judgment denying Martin's post-conviction relief motion. *See K.L.W.*, 131 S.W.3d at 407.